𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

VIOLETT AND OTHERS v. CITY COUNCIL OF ALEXANDRIA.

FEBRUARY 13, 1896.

1. LOCAL ASSESSMENTS—*Notice*—*Article XIV., Amendments to Constitution of United States*—*"Due Process of Law."*—Local assessments for street improvements are an exercise of the taxing power of the State, and Article XIV. of the Amendments to the Constitution of the United States applies to such assessments; and a law which authorizes such assessments without reasonable notice to the person of whom the assessment is exacted, and without affording him an opportunity to appear and contest the legality, justice, and correctness of the assessment before it is finally determined upon, deprives such person of his property without due process of law, and is void. "Due process of law" requires that a person shall have reasonable notice, and a reasonable opportunity to be heard before an impartial tribunal, before any binding decree can be made affecting his rights to liberty or property. It is not enough that the owner may by chance have notice, or that he may, as a favor, have a hearing. The law itself must require notice to him, and give him a right to a hearing and an opportunity to be heard. While the Legislature may prescribe the kind of notice and the mode of service, it cannot dispense with all notice.

2. LOCAL ASSESSMENTS—*Benefits*—*Article X., Section 1, Constitution of Virginia*—*Charter of City of Alexandria.*—Statutes authorizing local assessments on abutting lands or lots, to meet the expense of improvements to the street in front of such land or lots, levied according to the benefits to such land or lots, are not in violation of section 1 of Article X. of the Constitution of this State, and are valid· Section 33 of the charter of the city of Alexandria, as amended by an act of the Legislature approved March 1, 1888, is not in conflict with said section of the Constitution.

3. LOCAL ASSESSMENTS—*Benefits Conferred*—*Assessments by Front Foot*—*City Charter*—*Ordinance of City of Alexandria.*—While the Legislature may grant to municipal corporations the power to levy local assess-

ments for street improvements, yet the statute making the grant must be strictly construed, and the municipality must keep closely within its provisions: If the statute conferring the power to make such assessments limits its exercise to the benefits, by the improvements, to the property assessed, or is not broad enough to confer on the municipality the power to select the mode of assessment, then an assessment by frontage is an unwarranted assumption of benefits, and does not meet the requirements of the statute, but is in conflict therewith. Tested by this rule, the ordinance of the City Council of Alexandria, under which the assessment in the case at bar was made, is not authorized by the charter of said city under which the ordinance was passed.

Appeal from a decree of the Corporation Court of Alexandria, pronounced on the 18th day of May, 1895, in a chancery cause wherein the appellee was complainant, and the appellants were defendants.

*Reversed.*

The opinion states the case.

*A. W. Armstrong,* for the appellants.

*E. B. Taylor* and *S. G. Brent,* for appellee.

CARDWELL, J.

The thirty-third section of the charter of the city of Alexandria, as amended by an act of the Legislature approved March 1, 1888, provides :

" Whenever any street shall be laid out or extended, or any existing street graded, paved, or repaved, or culvert or sewer built, or curbing put down, two-thirds of the expenses thereof shall be paid by the owners of the real estate benefitted thereby. Whenever any sidewalk shall be laid, the whole expense thereof shall be paid by the owners of the real estate benefitted thereby."

The City Council of Alexandria, by an ordinance approved May 12, 1886, provided that " whenever paving, gravelling, or other improvements of the street shall be ordered to be done by the City Council, whether of the sidewalk or carriage-way, that it shall be the duty of the superintendent of police, immediately upon the completion of the same, to return to the clerk of the Common Council a statement of the total expense thereof, with a list of the proprietors of the ground in front of which said paving, gravelling, or other improvements shall have been done, or curbing put down, showing the extent of the front ground of every such proprietor, and including the half of any joint alley running into the street paved, gravelled, or otherwise improved, or upon which curbs have been put down, which statement shall be filed and preserved by the said clerk, who shall also forthwith make out and deliver to the proper collector of taxes, for collection according to law, bills against every such proprietor for two-thirds of an amount which shall bear the same ratio to the cost of all the work done on that half of the street on which his lot fronts as the front of the proprietor's ground bears to the front of all the lots on the same side of and binding on that portion of the said street so paved, gravelled, or otherwise improved. And the like proceedings and privileges shall be had by said collector in regard to such bills as in regard to bills for other taxes, assessments, or charges."

By virtue of the aforesaid thirty-third section of the charter, the City Council of Alexandria passed the following ordinance:

" Be it ordained by the City Council of Alexandria, Va., That the Committee on Streets are hereby authorized and directed to have the curbing set, gutters paved, and a six-foot brick sidewalk put down on both sides of Alfred street, from the south line of Duke street to the north line of Wilkes

street, and the said Committee on Streets shall advertise for ten days, in some newspaper published in the city of Alexandria, for proposals to do said work, and shall enter into contract with the lowest responsible bidder for said work, and require of the person or persons contracting to do said work, or furnishing the material therefor, to give bonds in the penalty of one thousand dollars, with surety or sureties to be approved by said committee, conditioned for the faithful performance of said contract.

" Be it further ordained, That an assessment shall be levied upon the property binding on said street, as described in this ordinance, to-wit : Two-thirds of the cost of such guttering and curbing to be paid by the owners of the real estate fronting on said street, and the whole of the cost of putting down said brick sidewalk to be paid by the owners of the real estate on said street.

" The Committee on Streets are authorized to employ a competent engineer to superintend said work, at a cost not to exceed five dollars ($5.00) a day."

Pursuant to this ordinance the curbing was set, gutters paved, and a six-foot brick sidewalk put down on both sides of Alfred street from the south line of Duke street to the north line of Wilkes street, as provided for in the ordinance.

The total cost of this work amounted to $1,989.36, and this was apportioned, according to frontage, among the owners of the lands abutting on Alfred street as to two-thirds of the costs of curbing and paving the gutters, and as to the whole of the costs of the sidewalks, the city of Alexandria paying one-third of the cost of curbing and paving gutters. Of this frontage the heirs of Robert G. Violett, who are the appellants here, owned 353 feet 2 inches, extending back with that width 123 feet 5 inches, and were assessed with the sum of $396.03 as the proportion of the total costs of the improvements to Alfred street to be borne by their property abutting

on that street, this sum including two-thirds of the cost of the curbing and paving the gutters and the entire cost of the sidewalk, and apportioned according to frontage.

On the 29th of March, 1895, the City Council of Alexandria filed its bill in the Corporation Court of the city of Alexandria against appellants, to enforce the lien claimed by the complainant on appellant's property on Alfred street for the amount assessed against the property as stated. The defendants demurred to and answered this bill. The answer admits that the work was done as set out in the bill, but denies that the lot of ground on which complainant claims a lien has been benefited by the improvements to Alfred street, and denies that complainant has a lien on the lot of ground as claimed.

Upon the hearing of the cause, on the bill and exhibits therewith, and the demurrer and answer thereto, the Corporation Court of Alexandria overruled the demurrer, and decreed a sale of the property to be made by commissioners appointed, unless the defendants paid to the complainant, the City Council of Alexandria, within thirty days, the amount claimed in the bill, and the costs of this suit. From this decree an appeal and *supersedeas* was awarded by a judge of this court.

The facts in the case are few, and need not be considered, as they are in the main not controverted; but the grounds upon which appellants deny the validity of the claim asserted by appellee are as follows:

1st. The ordinance under which the claim arises is contrary to the fourteenth amendment to the Constitution of the United States, which declares that no State shall " deprive any person of life, liberty, or property without due process of law."

2d The charter and ordinances of the city of Alexandria are in conflict with section 1, Article X., of the Constitution of Virginia, in which it is provided :

" Sec. 1. Taxation, except as hereinafter provided, whether imposed by the State, county, or corporate bodies, shall be equal and uniform, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as prescribed by law. No one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of equal value."

3d. The City Council of Alexandria did not have the authority, under the provisions of the thirty-third section of the charter, to pass the ordinance set forth in the bill of complaint, and said ordinances are in conflict with the charter, and null and void.

The first question to be considered may be stated in this form: Can an assessment for a local improvement be exacted by a municipal corporation until the person of whom it is exacted shall have had opportunity to appear and contest the legality, justice, and correctness of the proposed assessment ?

It will be observed that the section of the charter of Alexandria, and the ordinance under which the controversy arises, quoted in full above, do not provide for any notice to the owners of the lots abutting on Alfred street, which gave them the opportunity to be heard before their property was assessed to meet the costs of the proposed improvements to the street. The earnest contention of counsel for appellee is, that the fourteenth amendment to the Constitution of the United States does not apply to local assessments for improvements, but relates principally to the exercise of the right of eminent domain; while, on the other hand, it has been argued in the courts of some of the other States of the Union that it does not apply to the exercise of the right of eminent domain. This question, however, is reviewed by Lewis, in his work on Eminent Domain, section 365, where he shows, upon reason and authority, that the provision cannot be restricted either to the exercise of the right of eminent domain or to other proceedings affecting liberty or the rights of property. He says that the provision that private property shall not be

taken for public use without just compensation is simply an
*additional* guarantee to the provision that a citizen shall not
be deprived of his liberty or property without due process
of law; that "the one provision is not exclusive of the
other. The one prevents the property of the citizen being
taken under the power of eminent domain for any purpose
except public use, and then only upon making just compensa-
tion; while the other prevents his property being taken for
public use *without due process* of law." And he then adds:
"Without attempting to answer this question [what is 'due
process of law'] by a general definition, it is sufficient for
the present enquiry to say that all the authorities agree that
due process of law requires that a person shall have reason-
able notice, and a reasonable opportunity to be heard before
an impartial tribunal, before any binding decree can be-
passed affecting his right to liberty or property." We need
not extend the discussion as to what is due process of law,.
for it is not pretended that there has been due process of law
in the proceedings leading up to the assessment in the case at
bar, but the claim is that the provision does not apply.

That local assessments are made under the taxing power does
not admit of a doubt, says Burroughs, in his excellent work on
Taxation, p. 461. See also Cooley on Taxation, pp. 623–4,
where the author says: "That these assessments are an exer-
cise of the taxing power has over and over again been affirmed,
until the controversy must be regarded as closed"—citing
numerous authorities.

J. Bedle, in the opinion of the Supreme Court of New Jer-
sey, in the case of *The State, Wm. Sigler, Prosecutor,* v. *Ful-
ler, Collector, &c.,* 5 Vroom 227, says: "This class of assess-
ments is distinguishable from our general idea of a tax, but
owes its origin to the same source of power; and this power
to tax should exist in the discretion of the Legislature, with-
out the interference of the courts, unless some radical princi-

ple is violated, or the guarantees of the Constitution are disturbed under color of its exercise."

A clearer statement of the rule that should govern in considering the question arising in this case cannot be found, and brings us directly to the question whether the enforcement of a local assessment for improvements to a street, where the person of whom the assessment is exacted has had no opportunity to appear and contest the legality, justice, and correctness of the assessment before it is finally determined upon, and a lien fixed on his property, is the taking of his property " without due process of law," within the meaning of the provision of the Federal Constitution.

In every instance where the rights of property are involved, before the liability of the tax-payer is finally determined, he must have some kind of notice of the proceedings, and an opportunity to be heard with reference to the value of his property and the amount of the charge. 2 Have's Amer. Con. Law 871, and cases cited in note 3.

In *Cooper* v. *Board of Public Works*, 108 E. C. L. 181, involving the action of the Board of Public Works in pursuance of a statute which did not require notice, Willis, J., said : " I apprehend that a tribunal which is, by law, invested with power to affect the property of one of her majesty's subjects, is bound to give such subject an opportunity of being heard before it proceeds. And that rule is of universal application, and founded upon the plainest principles of justice."

Judge Earl, in an elaborate opinion of the Court of Appeals of New York, in *Stuart* v. *Palmer*, 74 N. Y. 191, said : " It is difficult to define with precision the exact meaning and scope of the phrase ' due process of law.' Any definition which could be given would probably fail to comprehend all the cases to which it would apply. It is probably better, as recently stated by Mr. Justice Miller, of the United States Supreme Court, ' to leave the meaning to be evolved by the

gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded.' *Davidson* v. *New Orleans*, 96 U. S. 104. It may, however, be stated generally that due process of law requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. *We cannot conceive of due process of law without this.*" And again : " It has always been the general rule in this country, in every system of assessment and taxation, to give the person to be assessed an opportunity to be heard at some stage of the proceedings. That due process of law requires this has been quite uniformly recognized."

The case of *Stuart* v. *Palmer, supra,* arose under the act of the General Assembly of New York, passed in 1869, and amended in 1870, entitled, " An act to lay out, open, and grade Atlantic avenue, in the town of New Lots, Kings county."

The act provided for two assessments—one for the damages awarded to the owners of the land, under sec. 3 of the act of 1869, as amended, and another for the expense of regulating, grading, &c., under sec. 4, as amended. The former assessment was to be made ·and confirmed after proper notice to and hearing of the parties interested. The latter assessment could be made without any notice to or hearing of any person, and was, under the provisions of the act, made a lien upon the lands upon which they should be assessed, and to be levied and collected in the same manner as other taxes are required by law to be collected. Stuart, upon whose land an assessment had been made under this act, brought his action against Palmer, collector of the taxes of the town of New Lots, to vacate the assessment, as a cloud upon his title to the land, and to restrain the collector from collecting the tax, upon two grounds, one of which was that the assessment had been made

without any notice to or hearing of him, or other property-owners. The opinion of the Court of Appeals of New York, by Judge Earl, as stated, held the act unconstitutional; that the assessment and lien thereof was void, and vacated and set it aside, because it was made, levied, and confirmed without any notice to plaintiff, or other property-owners affected by it; and that, as the act required no notice, and a provision for notice could not be implied, it was in effect to deprive the owner of his property without due process of law. A great number of authorities are cited to sustain this conclusion.

Mr. Justice Field, in discussing this question, in the opinion of the Circuit Court of the United States, District of California, 18 Fed. R. 410, says : " The notice to which we refer need not be a personal citation; it is sufficient if it be given by a law designating the time and place where the parties may contest the justice of the valuation. As a general rule, only a statutory notice is given. The State may designate the kind of notice and the manner in which it shall be given. All that we assert, or have asserted, is, that there must be a notice of some kind, which will call the attention of the parties to the subject, and inform them when and where they will be permitted to expose any alleged wrong in the valuation of which they may complain.

" It was with reference to the class of cases where values are to be formed upon evidence that we said, in the San Mateo suit, that notice and opportunity to be heard were essential to the validity of the assessment, and without which the proceeding by which the tax-payer's property was taken from him would not be due process of law."

This eminent jurist goes so far as to say that to exclude the operation of this constitutional provision in matters of taxation would necessitate a limitation by implication upon the broad and comprehensive language used, so as to make it read: " Nor shall any State deprive any person of

his property without due process of law, *except it be in the form of taxation*"; and adds that "the power of oppression by taxation is not thus permitted." He also says that "the contention that there is a difference in the law as to notice and opportunity to be heard when an assessment is made for local purposes, and where it is made under a statute providing revenue for the State, is without foundation"; that "nothing is better established, by a weight of authority absolutely overwhelming, than that notice and opportunity to be heard are indispensable to the validity of the proceeding." This case afterwards went to the Supreme Court of the United States, and the decision of the lower court was affirmed, but Mr. Justice Harlan, in delivering the opinion, does not discuss the constitutional questions so elaborately argued by both Mr. Justice Field and Judge Sawyer in the lower court, saying that it was unnecessary to do so, as the judgment could be affirmed on another ground.

In discussing the question whether the right to be heard in tax cases is a right which is indefensible, Judge Cooley, in his book on Taxation (1st ed.), pp. 265–6, says: "We should say that notice of the proceedings in such cases, and an opportunity for hearing of some description, were matters of right. It has been customary to provide for them as a part of what is 'due process of law' for these cases; and it is not to be presumed that constitutional provisions, carefully framed for the protection of property, were intended, or could be construed, to sanction legislation under which officers might secretly assess one for any amount in their discretion, without giving him an opportunity to contest the justice of the assessment. It has often been very pointedly and emphatically declared that it is contrary to the first principles of justice that one should be condemned unheard; and it has also been justly observed of tax officers that 'it would be a dangerous precedent to hold that any absolute power resides

in them to tax as they may choose, without giving any notice to the owner. It is a power liable to great abuse'; and it might safely have been added, it is a power that under such circumstances would be certain to be abused. The general principles of law applicable to such tribunals oppose the exercise of any such power." See also authorities cited in notes 1 and 2, p. 266.

Due process of law requires that he (the land-owner) shall have a chance to interpose objection to the validity of the tax, or to the contention that his land is liable for it, or to the manner of assessing or collecting it, at some stage of the proceedings, before his property is irrevocably gone, and before some authority competent to afford relief in case of invalidity or injustice. Black on Taxation, in note to case of *Read* v. *Durgess*, 8 C. C. A. 398.

Counsel for appellee cite in support of their contention the case of *Davidson* v. *New Orleans, supra*, quoting from the opinion of Mr. Justice Miller, in which he says substantially what is said by Mr. Dillon in his work on Mun. Corp., sec. 760, pp. 930–31–32: " That whenever, by the laws of a State, or by State authority, a tax assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceedings in regard to the property as is appropriate in such proceedings, it cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections. So the determination of the taxing district and the manner of the apportionment are all within the legislative power. And whenever the law operates alike on all persons and property, similarly situated, equal protection cannot be said to be denied." But it is clear to

my mind that this does not sustain appellee's contention, as
the court there declares in plain language that whenever the
laws there discussed provide a mode for contesting the charge
imposed in a court of justice, with such notice to the person,
or such proceedings in regard to the property as is appro-
priate to the nature of the case, then they do not deprive a
person of his property without due process of law, thus
clearly making the constitutionality of the law dependent
upon its giving notice to the party to be affected, and an op-
portunity of contesting the charge. In every case that I have
been able to examine which has gone to the Supreme Court
of the United States, and in which the question under con-
sideration was considered, that court has upheld the validity
of the laws, upon the ground that notice and hearing had been
provided for, or held the laws to be unconstitutional and
void, because notice to the party to be affected, and an oppor-
tunity to be heard, were not provided for. *McMillan* v. *An-
derson*, 95 U. S. 37; *Davidson* v. *New Orleans, supra ; Hager*
v. *Reclamation Dist. No.* 108, 111 U. S. 701; *Spencer* v.
*Merchant*, 125 U. S. 345; *Walston* v. *Nevins et als.* and
*Roach et als.* v. *Same*, 128 U. S. 578–582; *Lent* v. *Tillson,*
140 U. S. 316; *Paulsen* v. *Portland*, 149 U. S. 30; *R. R.
Co.* v. *Backus*, 154 U. S. 421.

But for extending the discussion of this question to too
great a length, if such is not already the case, numerous deci-
sions of the courts of other States might be cited and reviewed
wherein assessments for local improvements were held to be
void, and were vacated because made, levied, and confirmed
without any notice to property-owners affected.

I come now to consider the cases that have been before
this court since the adoption of the fourteenth amendment
to the Federal Constitution, growing out of assessments for
local purposes. They are: *Norfolk* v. *Ellis*, 26 Gratt. 224;
*Sands, Receiver,* v. *Richmond City*, 31 Gratt. 571; *R. & A.*

*R. R. Co.* v. *City of Lynchburg,* 81 Va. 473 ; *Green* v. *Ward,* 82 Va. 324 ; *Davis* v. *City of Lynchburg,* 84 Va. 861–870 ; and *Norfolk City* v. *Chamberlain,* 89 Va. 196.

In neither of these cases was the question as to whether the assessment was in conflict with the Federal Constitution raised or discussed, except in the case of *Davis* v. *City of Lynchburg.* In that case Judge Lacy, delivering the opinion of the court, in discussing the question that no provision was made for the person to appear and contest the proceedings, and that this deprived him of his property without due process of law, admits that the cases cited by counsel (for Davis) held that the ordinance without such provision for notice was unconstitutional, but says, " as an original question, it is obvious that all possible notice is given by the progress of the work itself, and, under our system of laws, every citizen is held charged with the notice of the public law." In the abstract, this latter proposition is sound, but I do not think that the first can be maintained upon reason or authority. It is not enough that the owners of property affected by a local assessment may *by chance* have notice, or that they may, *as a matter of favor*, have a hearing. The law must require notice to them, and give them a right to a hearing and an opportunity to be heard. It matters not, upon the question of the constitutionality of such a law, that the assessment has, in fact, been fairly apportioned. The constitutional validity of the law is to be tested, not by what has been done under it, but by what may, by its authority, be done. The Legislature may prescribe the kind of notice and the mode in which it shall be given, but it cannot dispense with all notice. *Stuart* v. *Palmer, supra,* 188.

The object of the Constitution, in requiring notice and the opportunity to be heard, is that a man may be able to protect himself from wrong. What opportunity is afforded him of doing so by seeing work being done on the street in front of

his property, when neither before nor after the passage of the ordinance is he given an opportunity to be heard as to the legality of the ordinance, or the charge against and lien upon his property by the work being done? While he may be held charged with notice of a public law, he cannot be held so charged by a law that is unconstitutional.

In addition to the fact that the question of "due process of law" guaranteed by the Federal Constitution was not raised nor discussed when the case of *Norfolk City* v. *Ellis, supra,* was decided by this court, the fourteenth amendment had been but a few years before adopted, and, so far as I have been able to find, no case had been decided by either a State or Federal court at that time in which this question was raised, and the cases relied on as authority by Judge Staples for the decision in the *Ellis Case* were cases determined before the adoption of the fourteenth amendment. At all events, none of them are decisive of the question.

Upon this question I am of opinion that where a statute, *i. e.,* the charter of a municipal corporation, authorizes an assessment of any part of the costs and expenses of opening, extending, grading, or otherwise improving the streets or sidewalks of such corporation, upon the land or lots abutting on the street opened, extended, graded, or otherwise improved, without providing for a notice to the person whose property may be affected by the assessment, giving such person an opportunity to appear and contest the legality, justice, and correctness of the assessment at some stage in the proceedings before the assessment becomes final, such statute is in conflict with the fourteenth amendment to the Constitution of the United States, and that an assessment made thereunder is void, and creates no lien upon his property.

The validity of assessments for local purposes, made under the charters and ordinances of the cities concerned, was fully considered and decided in the Virginia cases named above, in

each of which, with the exception of *Chamberlain's Case*, 89 Va. 196, the assessment was declared not to be in violation of section 1 of Article X. of the State Constitution, the right to make the assessment being upheld upon the theory of benefits to the abutting lot-owners.

*Chamberlain's Case* was typical of that class referred to by Judge Staples in the opinion of this court in *Norfolk City* v. *Ellis, supra,* where he says: "I do not mean to say that cases may not occur of such gross oppression and injustice as to require judicial interference"; and the decision of the court, holding that the assessment on Chamberlain's land or lot was void, was on this ground. It may, therefore, be said that the decisions of this court uniformly hold that an assessment upon abutting lands or lots to meet the expense of improvements to the street in front of such land or lots, levied according to benefits to such land or lots, is not in violation of section 1 of Article X. of the State Constitution.

The decisions of a majority of the courts of the other States of the Union having a similar constitutional provision are to the same effect. Among them are the States of New York, Ohio, Wisconsin, Missouri, California, Kansas, Connecticut, New Jersey, North Carolina, Louisiana, Tennessee, Iowa, Indiana, Vermont, and South Carolina. See also Burroughs on Taxation, 467 and pp. following; Elliott on R. & Sts. 369–70, and citation in note 2; 2 Dillon on Municipal Corporations, 911, 912, and 956. Mr. Burroughs says, on page 369 : "It is but just, it is well reasoned, to compel the land-owner, who gains by the value added to his land by the improvement, to pay that value, rather than to exact it from those who receive no direct benefit. It detracts nothing from his gain that others profit by the improvement." So, as was said by Judge Lacy in *Davis* v. *City of Lynchburg, supra,* "we cannot be unmindful of the salutary principle *stare decisis*"; and it must therefore be said that it is well-set-

tled law in Virginia that an assessment for local improvement, such as is authorized by section 33 of the charter of Alexandria city, is not in conflict with section 1 of Article X. of the Constitution of Virginia.

It remains, however, to be determined whether the city ordinances of Alexandria, under which the assessment was made, are in conflict with the charter of the city, and therefore void. As will be readily observed, the 33d section of the charter provides for an assessment upon the owners of the real estate benefited, *i. e.*, according to the benefits to the property assessed by the improvements; while the ordinances of the city provided, and the assessment in this case was made, according to the proportion the front of appellants' ground bears to the front of all the lots on the same side of and binding on that portion of Alfred street improved; in other words, the assessment was authorized by the ordinances and actually made according to the frontage of appellants, and not according to the benefits to their ground by the improvements to Alfred street.

Municipalities having no inherent power in these cases, it is necessary to the validity of their action that they keep closely to the authority conferred. Their ordinances and resolutions must be adopted in due form of law, and they must keep within them afterwards. They can bind the taxpayer only in the mode prescribed, and can substitute no other. This is the general proposition of law as laid down by Judge Cooley in his work on Taxation (2d ed.), 656.

In discussing this question, Mr. Burroughs, in his work on Taxation, sec. 148, 472–3, says: "It will be noticed that the questions discussed in this section are totally different from those in section 147. In that section the question was as to the power of the Legislature to adopt one mode in preference to another; here the question is, when the Legislature has delegated the authority to cities or towns to assess the expense

on the lots or property benefited, whether such a delegation of power limits the municipal authorities as to the mode of making the assessment, or whether, having such authority, they may select the mode of apportioning the expense, and impose it by the front foot, square foot, or value, just as the Legislature might have done. The weight of authority and of the analogies of the law are decidedly that such a delegation limits the municipal authorities to the mode of assessment according to the benefits conferred by the improvements. * * * No case can be found, it is believed, in which an assessment not according to the benefit conferred has been sustained, when the delegation of authority was to assess on the property benefited." He then adds: "The case of *Norfolk City* v. *Ellis*, 26 Gratt. 224, which is seemingly opposed to this position, does not discuss this question. It merely discusses and decides the general question that an assessment by the front foot is not void, and even in that case it is said that there should be a remedy for cases of hardship by appeal to the Council for abatement." In this section (148) the writer does say: "That in Pennsylvania, however, a general delegation of authority to make rules and regulations and keep streets in repair, and to collect a tax for that purpose, was considered sufficient to sustain an assessment by the front foot." Here the statute delegating the authority was considered broad enough to confer upon the city authorities the power to select the mode of assessment. It may also be said with reference to *Ellis's Case, supra*, that the assessment was made under a provision of the charter of Norfolk city which conferred upon the Council of the city authority to raise annually by taxes and assessments such sums of money as they might deem necessary to defray the expenses of street improvements, and in such manner as they should deem expedient.

Whether an assessment by the front foot, *i. e.*, according

to the frontage on the street improved, where the charter expressly authorizes this to be done, or is broad enough to plainly confer upon the city the power to select the mode of assessment, would be a valid assessment, I express no opinion, nor as to whether an assessment upon the land or lots abutting on the street improved, for the entire costs of improvements would be valid, as a decision of these questions is not necessary in this case. The question here is, as we have seen, whether the ordinance by which the assessment is per frontage is authorized by section 33 of the charter of Alexandria, which section authorizes an assessment on the property benefited, and clearly means, I think, that the assessment is to be made in accordance with the peculiar benefits accruing to the property assessed by reason of the improvements—certainly not in excess of such benefits.

Upon the theory of benefits rests all of the decisions of this court and of other courts upholding assessments of this character, and upon this theory alone are they looked upon with favor by text-writers; nor can they, upon reason and sound principles of justice, be justified upon any other theory. All of the authorities maintain that when the power to levy such assessments is delegated by the Legislature to a municipal corporation, the act must be strictly construed, and that the city authorities must keep closely within its provisions. To this effect are the decisions of the court in *Green* v. *Ward, &c., supra,* and *Kirkland* v. *Russell, Auditor,* 76 Va. 956. Strike out the element of benefit, and a special assessment loses its foundation. Elliott on R. and Strs. 405.; *Asberry* v. *City of Roanoke,* 91 Va. 562. It may be that the assessment upon the property of appellants per front foot does not exceed the peculiar benefits to their property. They deny that it has been benefited at all, and there is no proof on the subject; but this is immaterial to a decision of the question here. It is clear to my mind that where the statute confers this power,

and limits its exercise to the benefits by the improvements
to the property assessed, or is not broad enough to be con-
sidered, by fair intendment, to confer upon the authorities of
the city the power to select the mode of assessment, an assess-
ment per frontage is an unwarranted assumption of benefits,
and does not meet the requirements of the statute, but is in
conflict therewith.

For the foregoing reasons, I am of opinion that the decree
of the Corporation Court of the city of Alexandria, over-
ruling appellants' demurrer to the bill filed in this cause, was
erroneous, and should be reversed, and that this court should
enter such decree as the Corporation Court ought to have
entered, sustaining the demurrer and dismissing the bill.

The other judges concur in the opinion of CARDWELL, J.

*Reversed.*