102   53
f102 739

# Richmond.

## ADAMS v. CITY OF ROANOKE.

### NOVEMBER 19, 1903.

#### Absent, Buchanan, J.*

1. LOCAL ASSESSMENTS—*Benefits—Frontage—Proportionate Value of Lots.*—The right to make special assessments to meet the expense of local public improvements rests upon the principle that the property assessed is peculiarly benefited by the improvement; and it does not necessarily appear that this principle is violated, because one-half of the cost of the improvement is apportioned among the property owners benefited according to their frontage, or merely because a piece of property assessed for taxation at one value is required to pay a slightly larger sum than another piece of property assessed for taxes at a higher value.

2. LOCAL ASSESSMENTS—*Notice and Opportunity to be Heard—"Due Process."*—A statute which authorizes a special assessment to meet the expense of a local public improvement must provide for giving the owner of the land assessed a reasonable notice and an opportunity to appear and contest the legality, justice and correctness of the assessment before it is finally determined upon, otherwise it deprives such owner of his property without "due process of law," and is void. It is not necessary, however, that such owner should be informed of every step in the proceeding. It is sufficient if he is given a hearing at which he may insist that his property is not benefited to the amount assessed, or that it is not benefited at all.

3. LOCAL ASSESSMENTS—*In Accordance With Benefits—No Benefits.*—An ordinance or resolution of a City Council, directing a special assessment for local improvements, in accordance with or not in excess of the benefits derived from the improvement, opens up the whole question of benefits derived by a particular piece of property, even to the extent of denying any benefits whatever.

---

*Judge Buchanan was detained at home by sickness.

Opinion.

4. LOCAL ASSESSMENTS—*Acts 1899-1900, p. 1147—Constitutional Law.— Case at Bar.*—The Act of Assembly of March 7, 1900 (Acts 1899-1900, p. 1147), entitled "An act to provide for local assessments in cities and towns," makes ample provision for giving due notice to the owner of property assessed for local improvements, and affords such owner abundant opportunity to appear and contest the legality, justice and correctness of such improvement. The act is not in conflict with the Fourteenth Amendment of the Constitution of the United States, forbidding the taking of property without "due process of law," and local assessments made in compliance with said act are valid. In the case at bar the requirements of the statute have been observed in every particular, and the landowner not only had ample opportunity to be heard, but availed himself of that privilege. As he had the opportunity of contesting the amount of the assessment, or whether there should be any assessment at all on his property, it was immaterial that he had no opportunity to be heard in the first instance, when the Council fixed the basis of apportionment between the city and the property owners. The only question of moment to him was whether or not his property should be assessed at all, and, if assessed, the amount of the assessment.

Error to a judgment of the Corporation Court of the city of Roanoke affirming, on appeal, the decision of the City Council of Roanoke city, making a local assessment on the property of the plaintiff in error.

*Affirmed.*

The opinion states the case.

*Scott, Staples & Staples,* for the plaintiff in error.

*C. B. Moomaw,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Hustings Court of the city of Roanoke, rendered on an appeal from the decision of the Committee on Sewers of the Common Council of the city, charging upon the property of plaintiff in error an assessment

to meet the cost of constructing a sewer system in the section of the city in which the property so charged is located.

The questions to be considered may be thus stated: First. Have the requirements of the statutes, authorizing the assessment, been complied with? and, second, If the statutes have been complied with, do they provide for *"due process of law,"* as required by the Fourteenth Amendment to the Constitution of the United States?

With reference to the first question, the petition for this writ of error says: "It must be confessed, except as regards the right of making a front foot assessment . . . there is no substantial departure from the statute, unless it be in the failure to give petitioner a hearing before the Council at the time it settled the basis of apportionment."

No good whatever would result from a review of the numerous authorities cited, for and against the proposition that the Legislature may authorize an assessment for local improvements on the property it determines is benefited thereby, according to its frontage, without any judicial inquiry as to the value of the property, the extent of the benefits accruing to it, or the basis of the apportionment, and that the courts are only justified in interfering when there has been an abuse of the law, since the record does not justify a contention that the law, under which the assessment is made, authorizes such an assessment, or that such an assessment has, in fact, been made. Suffice it to say that there is reputable authority for, as well as against, that proposition.

The issues presented here arise out of the proceeding had under the Act of March 7, 1900 (Acts of 1899-1900, p. 1147), and it is, therefore, with reference to that act that the case is to be considered.

It is entitled "An act to provide for local assessments in cities and towns," and provides: (1) That the Council "shall fix and determine the limits of the district within which the

real estate will, in its opinion, be benefited" by the proposed public improvement; (2) That ten days' notice shall be given to the property owners to appear before the Council, or a committee thereof, at a time and place named, and be heard for or against such public improvement; (3) After that hearing, the Council shall decide whether or not the improvement shall be made; how much of the cost thereof shall be paid by the city, and how much by the property owners; upon what principles that part chargeable to the property owners shall be apportioned between them; designate an officer who shall apportion that part chargeable to the property owners between them upon the principles prescribed by the Council, and report the plan and apportionment to the Council; (4) The report of the officer so designated, after lying twenty days in his office or that of the clerk of the Council, for inspection by any person whose property it is proposed to charge with any part of the cost of the improvement is to be referred to a designated committee, who shall, after ten days' notice to the owner of each parcel of such property of the existence of the report and of the amount it is proposed to charge against the property of such owner, give a hearing to such owner, at which he may show cause against the proposed assessment, and after such hearing the committee is to endorse its judgment on the notice in each case, and return the same to the Council; (5) Any one objecting to the judgment of the committee may appeal therefrom to the Corporation Court, which shall hear all legal evidence adduced, and ascertain therefrom the amount proper to be apportioned to the property of the party appealing, and to be a lien thereon.

By resolution adopted March 11, 1899, the committee of the Council on Sewers, were directed, at such time as they might fix, to give a hearing to the owners of the property abutting and bounding on certain streets and avenues mentioned, being section 25 of the general sewer system of the city, on the *"question of constructing sewers for the accommodation of their respective*

*properties."* The resolution further provided that the com-
mittee should give to the several property owners bounding and
abutting on certain named streets and avenues, or benefited by
the proposed improvement, notice of the time and place of the
hearing, which notice should be served at least ten days before
the hearing, and summon the property owners to appear before
the committee, to be heard for or against the proposed improve-
ment; that the hearing should not be had until a plan of the
proposed improvement had been made by the City Engineer,
with an estimate of the cost, and the amount to be paid by each
abutting owner, such plan and estimate to be filed in the clerk's
office of the Council, and be produced before the Committee on
Sewers at the hearing; that after the hearing, the committee
should report to the Council, with recommendation whether or
not the improvement should be made, and what proportion of
the costs, if any, should be paid by the owners of the real estate
included within the boundaries stated, or benefited by such im-
provement, and what proportion should be paid out of the city
treasury. The Committee on Sewers, after ten days' notice of
the time and place served upon the several property owners
within the district described in the above-mentioned resolution,
on May 3, 1899, at the office of the clerk of the Council, gave
them the hearing authorized and required by the resolution,
and it is admitted that plaintiff in error had notice of and was
represented at that hearing, the only complaint made with re-
spect to it being that the estimate of the costs of the improve-
ment, showing the amount which would be assessed against each
property owner, that the City Engineer was directed to supply,
was not furnished. It appears, however, that although the
statute does not attach any such condition to the hearing given
by the committee on May 3, 1899, the City Engineer did, in
fact, make a report to the Committee on Sewers of an estimate
of the costs of the proposed improvement, and this report was on
file in the office of the clerk of the Council when the hearing in

that office was given on May 3, 1899, the estimate then made of
the costs of the improvement proposed being the only estimate
practicable until the actual costs of the improvement were ascer-
tained.    But, if that were not the case, we do not think that an
omission to comply with that requirement of the resolution un-
der which the committee was acting would be sufficient to ren-
der void the assessment which followed against the property of
plaintiff in error and for reasons that will presently be given.

The hearing of the parties having been given on May 3,
1899, the committee reported to the Council that the property
located in the district described in the resolution of March 11,
1899 (including that of plaintiff in error) would be benefited
by the proposed improvement, and that it ought to be made,
and recommended the adoption of a resolution to that effect, and
for the payment of one-half of its cost by the owners of the pro-
perty bounding and abutting on the line of the proposed sewers,
or benefited by it, and for the payment of the remaining half
out of the city treasury, the one-half of the costs to be assessed
against the property owners to be apportioned among them as
the Council might determine after the completion of the im-
provement, which report was spread upon the minutes of the
proceedings of the Council.    The committee further recom-
mended the adoption of a resolution, directing the City Engi-
neer to advertise for bids for making the proposed improve-
ment, in accordance with the plans and specifications of that ·
officer on file in the office of the clerk of the Council.

On September 19, 1899, the Council, by resolution, after
reciting the provisions of the resolution of March 11, 1899,
and the proceedings thereunder, adopted the recommendations
of the Committee on Streets, and provided for the construction
of the proposed improvement, the costs thereof to be borne as
recommended by the committee.

Pursuant to that resolution the construction of the proposed
improvement was let to contract, and the work completed and

accepted by the City Engineer, which fact was reported to the Council by its Committee on Sewers, together with a resolution providing for the final assessment of the property lying within the boundaries of the section within which the improvement was made, which resolution was adopted .by the Council December 11, 1900. That resolution, after reciting the proceedings theretofore had concerning certain local improvements, including the system of sewers, constructed in section 25, upon which plaintiff in error's property abuts, provided that the costs of the construction of the sewers should be paid upon the basis of one-half the cost thereof, apportioned among the property owners bounding and abutting upon the improvements and benefited thereby, according to the front footage of the property owners, and the other half out of the city treasury; that the City Engineer should make up the assessment against the property owners in accordance with those principles, which list (assessment) should lie in his office for at least twenty days, open to inspection by any person whose property it is proposed to charge with such assessment; that the Committee on Sewers should give "at least fifteen days' notice of the existence of such report (list of assessments) to each person interested, in the manner provided by law for the service of notice, specifying the amount which is to be borne by the aforesaid assessment upon the lands of such property owners, which notice shall cite such person to appear at a time and place designated by the committee. . . . Any person objecting thereto shall appear in person or by attorney at the time and place designated in said notice, and shall be. heard at that meeting or at some subsequent one, and all further proceedings had shall be in accordance with the statute made and provided in such cases."

The City Engineer made up a list of the assessments it was proposed to charge against the several property owners, one hundred and twenty-nine in number, in accordance with the principles stated in the foregoing resolutions. It laid in his

office at least twenty days, open to inspection by any person interested. The Committee on Sewers gave each party interested at least fifteen days' notice of the existence of the list of assessments, and the parties so notified were cited to appear at the time and place designated by the committee, and make known their objections to the assessment, and plaintiff in error appeared, by counsel, before the committee at the time and place designated, and filed his objections to the assessment against his property. His objections having been overruled by the committee, he appealed to the Hustings Court of the city of Roanoke, where, upon the hearing of the case on the evidence adduced, the finding of the committee was affirmed, and to this judgment of the Hustings Court a writ of error was awarded by one of the judges of this court.

It is contended for plaintiff in error, (1) That he had no hearing on the question of how much should be assessed against his property on account of the improvement, from which it follows that the statute has not been observed, or the statute is in violation of the Fourteenth Amendment to the Constitution of the United States; (2) The benefits accruing from the improvement were not in proportion to the front foot of the lands assessed, and the statute did not authorize such an assessment unless the benefits were in such proportion; (3) If the statute authorized a front foot assessment where the benefits were not in like proportion, it is unconstitutional; (4) The estimate of cost to each property owner required by the Council to be filed and produced before the committee at the first hearing, was not filed and produced as required; and (5) The cost of the assessment was not apportioned as required by the resolution of the Council.

The preliminary hearing in this case was given under the Act of March 4, 1896 (Acts of 1895-6, p. 799), and the final hearing under the Act of March 7, 1900, *supra*. The only difference between the two statutes is, that the latter provides

in detail how notice of the hearing shall be served, with some difference in the time of the service; provides a different method of enforcing the lien of the assessment, and provides for docketing the judgment of the committee upon the judgment lien docket of the court in whose jurisdiction the improvements are made.

It was not contemplated that at the hearing "for and against the proposed improvement" the question as to what proportion of the costs of the improvement should be borne by each abutting landowner should be considered, but only whether or not the proposed improvement should be made at all. It was only the latter question that the committee was called upon to consider, and if their judgment was that the improvement should be made, it became their duty so to report to the Council, together with their recommendation as to the manner in which the costs should be borne, *i. e.*, what proportion, if any, should be borne by the city, and what by the several landowners to be benefited by the improvement. Then, if the Council determined to make the improvement, the question as to how its costs were to be borne, arose, and the statute provides that no part of the costs shall be charged upon an abutting landowner until he is given a hearing, at which he can make his objections to the assessment it is proposed shall be made against his property. Preparatory to this hearing, an officer is to be designated, "who shall, when the work shall have been completed, apportion the total expense thereof accordingly (*i. e.*, as the Council may have determined), and who shall also, upon such principles as shall be determined by ordinance or resolution of the Council, ascertain the proportionate part thereof it is proposed to assess against each parcel of such real estate, and make report thereof in writing to the Council." . . . Sec. 2, Act March 7, 1900, *supra*. Then follows the final hearing that the statute requires shall be given to each person whose property it is proposed shall bear any part of the costs of the improvement.

We are unable to see any ground for the contention that plaintiff in error did not have an opportunity to be heard as to his objections to the assessment proposed to be made against his property.    After the Council had determined to do the work, and that one-half of the cost thereof should be borne by the city, and the other half by the owners of the lots abutting on the lines of the improvement or benefited thereby, and after the work had been actually done, the officer designated for that purpose apportioned the total expense accordingly, ascertaining the amount to be charged against each lot or parcel of land within the district embracing the improvement according to the principles determined by the ordinance of the Council. The report of the officer (City Engineer) laid in his office, or the office of the Clerk of the Council, at least twenty days, open to the inspection of any person interested, and the owner of each parcel of the real estate affected by the proposed assessment had the notice required by the statute that he would be given an opportunity at a certain time and place to show cause against the assessment, before the committee of the Council to whom the report of the City Engineer was referred. That plaintiff in error had legal notice of that hearing given by the committee, and did actually appear by counsel, who made his objections to the proposed assessment or charge against his property, is not controverted.

Upon a careful comparison of the requirements of the statute with the proceedings of the Council in making the improvement and the assessment of the amounts to be charged to each parcel of real estate abutting on or benefited by the improvement in question, it appears to us that no other conclusion can be reached than that the requirements of the statute have been in every particular observed.

The statute under which the assessment was made was intended to secure to the lot owners in the several cities and towns within the State an opportunity to appear and contest

the legality, justice and correctness of a proposed assessment against their property, to defray any part of the expense of a local improvement, at some stage in the proceedings before the assessment becomes final, which was declared by this court to be his constitutional right. *Violett* v. *Alexandria,* 92 *Va.* 561, 23 S. E. 909, 31 L. R. A. 382, 53 Am. St. 825; *Heth* v. *Radford,* 96 Va. 272, 31 S. E. 8; *Norfolk* v. *Young,* 97 Va. 729, 34 S. E. 886, 47 L. R. A. 574.

The contentions of plaintiff in error seem to be based on the assumption that the property owner must have notice of every step of the proceedings, and more particularly that he did not have an opportunity to be heard when the Council fixed the basis upon which it was proposed to assess one-half of the costs of the improvement upon the several parcels of property benefited by the improvement.

What this court has held in the cases just mentioned (and it is in accordance with the great weight of authority found in the text-books and in the decisions of the courts of other jurisdictions, including the Supreme Court of the United States), is that local assessments for street improvements are an exercise of the taxing power, and Article XIV. of the Amendments to the Constitution of the United States applies to such assessments, and that a statute which authorizes a local assessment to meet the costs of such improvements must provide for giving the person of whom such assessment is exacted reasonable notice and opportunity to appear and contest the legality, justice and correctness of the assessment before it is finally determined upon, otherwise it deprives such person of his property without "due process of law," and is void.

If the law provides for the required notice to the landowner whose land it is proposed to charge with any part of the costs of the public improvement, an assessment against his property, made under it, will not be defeated if he has been given at some stage of the proceedings, a fair opportunity to be heard

to test the legality, justice and correctness of the assessment. It is only with the charge upon him that he is concerned, and of that alone can he complain. In the legality of that charge is necessarily involved the legality of all which precedes it, and of which it is the consequence. When the landowner has been given a hearing, at which he might insist that his property was not benefited to the amount assessed, or that it was not benefited at all, and thus obtains every advantage which he might obtain, were he informed of every step in the proceedings, there is no want of due process of law within the meaning of the Fourteenth Amendment; and, where the ordinance or resolution of the Council is that each lot in the district or section within which the improvement is made shall be assessed in accordance with or not in excess of the benefits derived from the improvement, the whole question of the amount of benefit derived by a particular parcel of real estate is opened up, even to showing that no benefit whatever was occasioned by the improvement. *Voight* v. *Detroit,* 123 Mich. 547, 82 N. W. 253; Id. 184 U. S. 116 (46 L. Ed. 459), 22 Sup. Ct. 337; and *Goodrich* v. *Detroit,* 184 U. S. 432, 46 L. Ed. 627 E., 22 Sup. Ct. 397.

In *Voight* v. *Detroit, supra,* construing a statute very similar to ours, it is held that the Fourteenth Amendment is not violated, because the statute makes "no provision for a notice to property owners of a time and place of hearing upon either the question of fixing a taxing district or the question of the amount of the award to be spread thereon." It was sufficient where the statute provides for a "hearing in relation to the proportion each piece of property should bear to the whole cost of the improvement, and the proper notice of this hearing had been given."

"A rule or standard of assessment sufficient to satisfy the constitutional requirement of due process of law is furnished by Mich. Com. Laws, 1897, sec. 3406, which, as interpreted

by the Supreme Court of the State, provides that a municipal council may assess the whole or such part as it may deem just of the costs of a local improvement upon such lands in the vicinity thereof as are benefited thereby, and limits the amount of the assessment upon each lot to the amount of benefits."

Some of the authorities go to the extent of saying that to require notice of every step taken towards the construction of a local public improvement, in order to charge upon a land owner whose property is benefited thereby an assessment to meet the costs of the improvement would be an intolerable burden upon the authorities of the municipality in which such improvement is made. The statute here under consideration with reference to notice of this hearing to be given to property owners affected by a proposed assessment to meet the costs of a local improvement, provides: "And said notice shall cite such person to appear, at a time and place designated, before a committee to be appointed for that purpose,    .    .    .    .    and show cause against the proposed assessment." And, after providing for an appeal from the decision of the committee on this hearing, the statute provides: "Every such appeal shall be tried by the court or judge thereof in vacation in a summary way, without pleadings in writing and without a jury, in term time or in vacation, upon reasonable notice to the adverse party. All legal evidence produced by either party shall be heard, whether the same was produced or not before the committee from whose decision the appeal is taken."

At the hearing thus provided for, the committee is not, as counsel for plaintiff in error contends, restricted to a mere consideration of the accuracy of the measurements and calculations of the City Engineer, but the whole question of the amount of benefit derived by the owner of the real estate affected, and the right to make objection to the proposed assessment thereon, is open to consideration, even to showing that no benefit whatever to his property was occasioned by the improvement, and

the right of appeal from the decision of the committee affords
him the additional opportunity to show any illegality, injustice,
or incorrectness of the proposed assessment.

The statute was intended to provide the requisites of "due
process of law" in making assessments for local improvements,
as defined by this court, and it is true that the statute and the
decisions referred to recognize that the right to make special
assessments to meet the costs of local public improvements rests
upon the underlying principle that the property upon which
they are imposed is peculiarly benefited by the improvement,
and, therefore, the owners do not, in fact, pay anything in
excess of what they receive by reason of such improvement;
but it does not necessarily appear that the principle has been
departed from by the fact that one-half of the cost of the im-
provement is apportioned among the property owners benefited,
according to their frontage.   Nor is the principle violated
merely by the fact that, by the apportionment, plaintiff in
error's lot is assessed with a fraction more than an adjoining
property valued for taxation at a larger sum than his property.
With what the plaintiff in error is concerned, as we have re-
marked, is the assessment or charge against his property, and
not whether another piece of property similarly situated is
assessed with too little or too much.   He owns a lot of fifty-
foot frontage, valued at $500.00, including buildings, and it
is assessed with $13.13 on account of the sewer system con-
structed in the section in which his property is located, and
upon which his property fronts.   It may be that in the appor-
tionment of one-half of the cost of the improvement among
property owners having lots in that section and benefited by
the improvement, errors have crept in; but this, if it were the
case, would not warrant the conclusion that the property of
plaintiff in error is assessed without reference to special benefits.

At the hearing given him by the Committee on Sewers, March
15, 1901, plaintiff in error filed objections founded, not upon

the ground that his property was not benefited by the improvement at all, but that he had not had the required notice; that the statute under which the assessment was made is unconstitutional; that the assessment was not in proportion to, or within the benefits, if any, received by him from the sewer constructed, and that the assessment is not in accordance with the resolutions and ordinances of the Council.

That plaintiff in error had the notice required by the statute, and that the statute is not in conflict with the Fourteenth Amendment to the Constitution, as interpreted by this and other courts, we have already shown. The record discloses no evidence introduced by him to show that his property was not benefited at all by the improvement, or that the assessment against it is in excess of the special benefits derived from the improvement, while quite a number of witnesses were introduced on behalf of the city, and all concur in the statement that the assessment against the property is not in excess of the benefits received.

Upon the whole case we are of opinion that the judgment of the Hustings Court of the city of Roanoke should be affirmed.

*Affirmed.*