## PAULSEN *v.* PORTLAND.

ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.

No. 183.    Argued and submitted March 28, 1893. — Decided April 17, 1893.

In view of the notice actually given of the meetings of the freeholders
appointed to estimate the proportionate cost of a sewer in Portland,
Oregon, and to assess the proportionate share of the cost thereof upon
the several owners of property benefited thereby, and in view of the
construction placed upon the ordinance by the City Council, and in view
of the approval of the proceedings by the Supreme Court of the State
as being in conformity with the laws thereof, *Held*, that, notwithstand-
ing the doubt arising from the lack of express provision for notice, the
requirements of the Constitution as to due process of law had not been
violated.

On March 5, 1887, the common council of the city of Portland
passed an ordinance, No. 5068, providing for the construction
of a sewer in the north part of the city, and known as Tanner
Creek sewer.    In pursuance of that and subsequent ordinances
the sewer was constructed, and the cost thereof cast by a
special assessment upon the lots and blocks within a prescribed
district.    The validity of this assessment was challenged by
this suit, the plaintiffs being lot owners in the sewer district.
The suit was commenced in the Circuit Court of the State of
Oregon for the county of Multnomah.    That court sustained
a demurrer to an amended complaint, and dismissed it, and
this decree of dismissal was affirmed by the Supreme Court of
the State.    16 Oregon, 450.

The burden of the complaint rested upon these allegations:

"Said ordinance numbered 5068, approved March 5, 1887, is unconstitutional and void, in this:

"§ 121 of chapter 10 of the charter of the said city of Portland, providing for the construction of sewers, under and by virtue of which said ordinance numbered 5068 was passed, is in violation of the Fourteenth Amendment to the Constitution of the United States, as it provides for taking private property for public use without due process of law; and said ordinance numbered 5068 is also unconstitutional and void, as it determines arbitrarily and absolutely that the property therein described is benefited by said Tanner Creek sewer without giving to the owners of said property any notice or opportunity to be heard upon that question. Said ordinance numbered 5162, approved August 19, 1887, is unconstitutional and void upon the same grounds as those upon which said ordinance numbered 5068 is unconstitutional and void as aforesaid, and also because said ordinance numbered 5162 provides for an assessment of the property therein named for the construction of said Tanner Creek sewer without providing for any notice to the owners whose property is therein and thereby assessed.

"Said ordinances and each of them and said assessment were and are unconstitutional, illegal and void because — and these plaintiffs aver the fact to be as now stated — plaintiffs had not nor had any of them any notice of the said proceedings of the said common council or any opportunity to be heard as to whether or not their property or the property of any of them was or could be benefited by said sewer, or as to the amount that was or should be assessed upon the several parcels of property named in said ordinance numbered 5162.

"Said ordinances and each of them and said assessment were and are illegal and void for the reason — and these plaintiffs aver the fact to be — that said common council and the said viewers and each of them knew that a large proportion of the property described in said ordinances, including the property of these plaintiffs, was and is a long distance away from said Tanner Creek sewer, and never would or could

be benefited by said sewer, and that a considerable portion of said property was lower in elevation than the bottom of said sewer, and that it was physically impossible for said property to be drained into said sewer or to be benefited by it in any way.

"And said ordinances and assessment and each of them were and are a gross abuse of power by said common council and in fraud of the rights of these plaintiffs.

"Said assessment is illegal and void and in violation of § 121 of chapter 10 of the charter of the said city of Portland, because — and these plaintiffs aver the fact to be — that said assessment was not made upon the property directly benefited by said sewer, but was made indiscriminately upon a large section of the city of Portland and without reference to the benefits to the property therein contained."

Section 121 of the city charter is as follows:

"The council shall have the power to lay down all necessary sewers and drains, and cause the same to be assessed on the property directly benefited by such drain or sewer, but the mode of apportioning estimated costs of improvement of streets, prescribed in sections 112 and 113 of chapter 10 of this act, shall not apply to the construction of such sewers and drains; and when the council shall direct the same to be assessed on the property directly benefited, such expense shall in every other respect be assessed and collected in the same manner as is provided in the case of street improvements: *Provided,* That the council may, at its discretion, appoint three disinterested persons to estimate the proportionate share of the cost of such sewer or drain to be assessed to the several owners of the property benefited thereby, and in the construction of any sewer or drain in the city shall have the right to use and divert from their natural course any and all creeks or streams running through the city into such sewer or drain." Oregon Session Laws, 1882, page 171.

Section 5 of ordinance 5068 commences: "Sec. 5. The streets and property within the district bounded and described as follows shall be sewered and drained into the Willamette River through the sewer in this ordinance provided

and ordered to be constructed along Tanner Creek and North Eighth street, from B street, near the intersection of North Fourteenth street to the Willamette River, to wit: Beginning," and then, after defining the boundary of the sewer district, declares: "And as the lots and blocks, and parts of lots and blocks, included within said district as above defined will be drained and sewered both by surface drainage and underground sewerage, by and through the sewer in this ordinance ordered to be located, constructed and put down, the said lots and blocks, and parts of lots and blocks aforesaid, are hereby declared to be directly benefited by such sewer and subject to assessment therefor, in proportion to the benefits received thereby, as provided in section 121 of the city charter of the said city."

Section 12 is as follows:

"Sec. 12. That R. L. Durham, Charles G. Schramm and H. W. Monastes, disinterested persons, be and they are hereby appointed viewers to estimate the proportionate share of the cost of said sewer to be assessed to the several owners of property benefited thereby in accordance with the provisions of section 121 of the charter of said city and report the same to the common council within sixty (60) days from the date of the approval of this ordinance by the mayor. Said viewers shall hold stated meetings in the office of the auditor and clerk of said city, and all persons interested may appear before said viewers and be heard in the matter of making said estimate."

Ordinance 5162 contains these provisions:

"The city of Portland does ordain as follows:

"Sec. 1. The common council of the city of Portland having by ordinance No. 5068 provided for the construction of a sewer, together with the necessary catch-basins, man-holes, lamp-holes and branches along Tanner Creek from North Fourteenth and B streets to North Tenth and H streets, thence along North Tenth street to I street, thence along I street to North Eighth street, and thence along North Eighth street to North Front street, and thence northeasterly to low water in the Willamette River:

"And having therein and thereby appointed three disinterested freeholders, viz., R. L. Durham, H. W. Monastes and

Charles G. Schramm to estimate the proportionate share of the cost of such sewer, to be assessed to the several owners of the property benefited thereby, and said assessors having made their report to the common council, which report being satisfactory is hereby adopted, said report being in words and figure as follows, to wit:

"To the hon. the common council of the city of Portland.

"GENTLEMEN : The undersigned appointed by your honorable body to assess the cost of constructing a brick sewer along Tanner Creek from North Fourteenth and B streets to North Tenth and H streets, thence along North Tenth street to I street, thence along I street to North Eighth street, thence along North Eighth street to North Front street, thence northeasterly to low water in the Willamette River, as provided by ordinance No. 5068, would respectfully beg leave to submit this our report.

· "We met at the office of the auditor and clerk and were furnished with the plans, specifications and contract, from which we have ascertained the probable costs to be $35,652.20, thirty-five thousand six hundred and fifty-two & $\frac{20}{100}$ dollars.

" In accordance with the requirements of said ordinance No. 5068 we gave notice of our first stated meeting June 25, 1887, at 6.30 o'clock P.M., (by publication of such notice in the Daily News, the official paper of the city,) at which time we met and proceeded with our work, adjourning from day to day until the final completion of our labors. We have assessed the cost of constructing said sewer to the several lots, parts of lots and tracts of land included within the boundaries defined by you in your ordinance No. 5068, in the several amounts as shown by the following tabulated statement. [Omitted, per stipulation.]

" SEC. 2. The auditor and clerk is hereby directed to enter a statement of the assessment hereby made in the docket of city liens, and cause notice thereof to be published in the manner provided by the city charter.

" Passed the common council, August 17, 1887.

"W. H. WOOD, *Auditor and Clerk.*

" Approved August 19, 1887."

*Mr. George H. Williams* for plaintiffs in error, submitted on his brief.

We contend that section 121 of the city charter makes no provision for notice of any kind to the property holders whose property is to be assessed to pay for the construction of sewers and drains, and is void, because it violates that clause of the fourteenth amendment to the Constitution of the United States which declares that no State shall deprive any person of life, liberty or property without due process of law. *Stuart* v. *Palmer*, 74 N. Y. 183.

Several cases involving the constitutional validity of assessments have been before this court; and in every case, it is believed, the court has affirmed or recognized the doctrine that an act of the legislature providing for an assessment upon real property must also, to be valid, provide for some kind of notice to the property holder, or an opportunity for him to be heard as to said assessment before it reaches the conclusiveness of a judgment. *Davidson* v. *New Orleans*, 96 U. S. 97; *Hagar* v. *Reclamation District*, 111 U. S. 701; *Spencer* v. *Merchant*, 125 U. S. 345; *Lent* v. *Tillson*, 140 U. S. 316; *Palmer* v. *McMahon*, 133 U. S. 660.

See also the following, bearing upon these issues: *Jordan* v. *Hyatt*, 3 Barb. 275; *Wheeler* v. *Mills*, 40 Barb. 644; *Ireland* v. *Rochester*, 51 Barb. 414; *Griffin* v. *Mixon*, 38 Mississippi, 424; *Mulligan* v. *Smith*, 59 California, 206; *Thomas* v. *Gain*, 35 Michigan, 155; *Darling* v. *Gunn*, 50 Illinois, 424; *Patten* v. *Green*, 13 California, 325; *The State* v. *Newark*, 25 N. J. Law, (1 Dutcher,) 399; *Same* v. *Same*, 31 N. J. Law, (3 Vroom,) 360; *State* v. *Plainfield*, 38 N. J. Law, (9 Vroom,) 95; *State* v. *Elizabeth*, 37 N. J. Law, (8 Vroom,) 353.

Our understanding is that in the construction of the city charter of Portland, this court will be governed by the decisions of the Supreme Court of Oregon. *Chicago, Milwaukee &c. Railway* v. *Minnesota*, 134 U. S. 418. That court holds, in the case of *Strowbridge* v. *Portland*, 8 Oregon, 67, approved in this case, that no notice is provided for and none is necessary to persons whose property is to be assessed for the construction of sewers.

This construction, then, is to be taken by this court as a part of the city charter; and, therefore, the plain question here presented is: Can the real property of a citizen of Portland, Oregon, be constitutionally assessed one hundred or five hundred or a thousand dollars, or any other sum, for the construction of a sewer in that city, and such property, if necessary, be seized and sold to pay such assessment, without any notice to the owner at any stage of the proceedings, or any opportunity given him to be heard before any tribunal or court upon the subject?

Moreover, the question here is whether or not the Supreme Court of the State of Oregon made a correct decision in this case. That court decided that the charter did not make any provision for notice to persons who are to be charged for the expense of constructing a sewer, and that in such case no notice is necessary; and this decision has not been overruled by any argument or illustration in the case of *The King Real Estate Association* v. *City of Portland*, but will stand as the law of the State of Oregon unless it is reversed by this court. There is no alternative. This court must either affirm that decision, and hold that no notice is required and none is necessary to persons whose property is to be charged for the construction of a sewer in the city of Portland, or it must, by a reversal of that decision, decide that notice of some kind is necessary under such circumstances.

We respectfully submit that this question ought to be put at rest in an emphatic decision by this court. It is a vital and far-reaching question, and seems not to be so fully settled as it should be. Municipal corporations are multiplying indefinitely in all parts of the United States. Towns of only a few hundred inhabitants are everywhere being incorporated as cities. City governments are proverbial for their reckless extravagance in the expenditure of money. They are more or less influenced, and sometimes controlled, by selfish partisans and unscrupulous jobbers. City taxation and assessments in some cases approach the confiscation of private property. Under these circumstances, the citizen cannot be too carefully protected. The spirit of the Constitution and the claims of justice

will never be fully recognized till the citizen has personal notice served upon him, or public notice equivalent thereto, of every proceeding in which he may be divested of life, liberty or property.

*Mr. William T. Muir* for defendants in error.

Mr. Justice Brewer delivered the opinion of the court.

The question is that of notice to the taxpayer. It is insisted that the Supreme Court held that section 121 did not provide for notice; that such construction of the State statute is binding upon this court; and that we must consider the case as though no notice was provided for. It is not entirely clear what construction has been placed upon section 121 by the Supreme Court of Oregon. In the case of *Strowbridge* v. *Portland*, decided in 1879, 8 Oregon, 67, 83, the provisions of the city charter in these respects being then substantially like those in the act of 1882, it was said by Judge Boise, delivering the opinion of the court:

"The elaborate manner pointed out in the charter for acquiring the authority to construct street improvements does not apply to the construction of sewers. The latter may be laid when, in the judgment of the city council, the same shall be necessary. They may be made without previous notice, the council alone being the judge of their necessity."

This language is quoted with approval by Chief Justice Thayer, in delivering the opinion of the court in this case. *Paulsen* v. *Portland*, 16 Oregon, 450, 464. But on the petition for a rehearing, which was denied by two judges to one, each of the judges in favor of denying gave a brief opinion, and Judge Strahan in his says:

"But it is objected that neither the charter nor ordinance expressly provides for notice, and that, therefore, though notice may have been in fact given, the constitutional objection of want of notice is not met.

"Sections 95, 96, 97, 98 and 99 of the charter all provide for and regulate notice in case of improvement of streets; and

§ 121, which authorizes sewers, provides, among other things,. 'and' when the council shall direct the same (costs) to be assessed on the property directly benefited, such expense shall in every other respect be assessed and collected in the same manner as is provided in the case .of street assessments.' The charter expressly provides for notice in case of street assessments, and § 121 makes the provisions applicable in case of sewers where the expense is ordered by the council to be made a charge on the property directly benefited."

In the subsequent case in the same court of *King Real Estate Association* v. *Portland,* decided in 1892, and reported in 31 Pac. Rep. 482, it was held that: "The provision that such expense shall be assessed in the same manner as is provided in the case of street improvements, necessarily makes such sections, in regard to street improvements, with the exceptions noted, a part of section 121, for that purpose." It would seem from this that the final construction placed by the Supreme Court was to the effect that the charter requires notice as much in the matter of sewers as of street improvements.

But were it otherwise, while not questioning that notice to the taxpayer in some form must be given before an assessment for the construction of a sewer can be sustained, as in any other demand upon the individual for a portion of his property, we do not think it essential to the validity of a section in the charter of a city granting power to construct sewers that there should in terms be expressed either the necessity for or the time. or manner of notice. The city is a miniature State, the council is its legislature, the charter is its constitution; and it is enough if, in that, the power is granted in general terms; for when granted, it must necessarily be exercised subject to all limitations imposed by constitutional provisions, and the power to prescribe the mode of its exercise is, except as restricted, subject to the legislative discretion of the council. Thus, in the case of *Gilmore* v. *Hentig,* 33 Kansas, 156, it was held thus: "Where a statute authorizes a city to provide for the construction of sewers and drains, and to tax the costs thereof upon the adjacent property owners, but does not require that any notice shall be given to the property owners,

*held,* that such failure to require notice does not render the statute unconstitutional or void, but notice must nevertheless be given, and the city would have a broad discretion with reference to the kind of notice and the manner of giving the same." See also *Cleveland* v. *Tripp,* 13 R. I. 50; *Davis* v. *Lynchburg,* 84 Virginia, 861; *Williams* v. *Detroit,* 2 Michigan, 560 ; *Gatch* v. *Des Moines,* 63 Iowa, 718; *Baltimore & Ohio Railroad* v. *Pittsburgh, Wheeling &c. Railroad,* 17 W. Va. 812, 835.

But it is further insisted that, even if the general grant of power in a charter to do a work of this kind is sufficient without an express provision in it as to notice to the taxpayers, the city in the execution of that power must by ordinance provide for notice and prescribe its terms, and that these ordinances contained no such provision. Here again we are met with an apparent difference in opinion of the two judges of the Supreme Court of Oregon, concurring in the judgment in favor of the city. The Chief Justice seems to consider the matter of notice immaterial, relying upon the doctrine of *stare decisis,* that the right of the city to carry through such a work without any notice had been settled years ago in the *Strowbridge Case;* while Judge Strahan makes these observations :

" In addition to this, § 12 of ordinance No. 5068 provides that the viewers shall hold stated meetings at the office of the auditor and clerk of said city, and all persons interested may appear before said viewers and be heard in the matter of making said estimates.

" I think it would be a reasonable construction of this ordinance to hold that the right to be heard implies that notice shall be given, and, if this be so, the ordinance does provide for notice by necessary implication.

" That which is implied in a statute is as much a part of it as what is expressed. *Minard* v. *Douglas County,* 9 Oregon, 206."

But what was in fact done by the city ? By ordinance 5068 it ordered the construction of a sewer, and directed what area should be drained into that sewer, and created a taxing

district out of that area. For these, no notice or assent by the taxpayer was necessary. A sewer is constructed in the exercise of the police power for the health and cleanliness of the city, and the police power is exercised solely at the legislative will. So also the determination of a territorial district to be taxed for a local improvement is within the province of legislative discretion. *Willard* v. *Presbury*, 14 Wall. 676 ; *Spencer* v. *Merchant*, 125 U. S. 345, 355. By the same ordinance the city also provided that the cost of the sewer should be distributed upon the property within the sewer district, and appointed viewers to estimate the proportionate share which each piece of property should bear. Here, for the first time in proceedings of this nature, where an attempt is made to cast upon his particular property a certain proportion of the burden of the cost, the taxpayer has a right to be heard. The ordinance named a place at which the viewers should meet, directed that they should hold stated meetings at that place, and that all persons interested might appear and be heard by them in the matter of making the estimate. The viewers, upon their appointment, gave notice by publication in the official paper of the city of the time of their first meeting. Notice by publication is a sufficient notice in proceedings of this nature. *Lent* v. *Tillson*, 140 U. S. 316, 328. As the form of the notice and the time of its publication are not affirmatively disclosed in the complaint, it must be assumed that there was no defect in respect to these matters. The precise objection is, that although proper and sufficient notice may have been given, it was not in terms prescribed by the ordinance appointing the viewers. But, as held by the Supreme Court of Oregon in the case referred to, *Minard* v. *Douglas Co.*, 9 Oregon, 206, that which is implied in a statute is as much a part of it as that which is expressed ; and where a statute or an ordinance provides for stated meetings of a board, designates the place at which the meetings are to be held, and directs that all persons interested in the matter may be heard before it, it is, as said by Judge Strahan, not a strained interpretation that it is implied thereby that some suitable notice shall be given to the parties interested.

But, further, the viewers made formal report to the council of what they had done, stating that they had, in accordance with the requirements of ordinance 5068, given notice by publication, and the council, in the subsequent ordinance 5162, recites that their report is satisfactory and adopted. In other words, the council by this latter ordinance approved the construction placed by the viewers upon the first, to the effect that it required notice. It would seem that when notice was in fact given, notice whose sufficiency is not challenged, a construction put by the council upon the scope and effect of its own ordinance should be entitled to respect in any challenge of the regularity of the proceedings had under that ordinance. It is settled that, if provision is made " for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law." *McMillen* v. *Anderson*, 95 U. S. 37; *Davidson* v. *New Orleans*, 96 U. S. 97; *Hagar* v. *Reclamation District*, 111 U. S. 701; *Spencer* v. *Merchant*, 125 U. S. 345. If, before the viewers had in fact met, yet after they had published notice, the council had passed an ordinance reciting an approval of that act of notice, it could hardly be doubted that the full requirements of law as to notice were satisfied. Because this approval was not made until after the hearing before the viewers, is it thereby worthless, of no validity? And can this court say, when those proceedings have been sustained by the Supreme Court of the State, that rights guaranteed by the federal Constitution have been stricken down, and that these individuals have been deprived of their property without due process of law?

Another matter may be mentioned: The second section of ordinance 5162 directed the ordinary publication of notice of the assessment. The charter, section 102, required a " docket of city liens," in which was entered, first, the description of each piece of property assessed; second, the name of the owner, or that the owner is unknown; and, third, the sum assessed upon such piece of property, and the date of the entry; and by section 104 it was provided that " a sum of

money assessed for the improvement of a street cannot be collected until, by order of the council, ten days' notice thereof is given by the auditor, by publication in a daily newspaper published in the city of Portland. Such notice must substantially contain the matters required to be entered in the docket of city liens concerning such assessment."

Now, without deciding that this notice is sufficient notice to bring the proceedings within "due process of law," it is worthy of remark that during the ten days of publication, made as required by said section 104 and section 2 of ordinance 5162, the plaintiffs did not challenge the regularity of the proceedings or apply to the council for an inquiry into the justness of the apportionment, nor did they commence any suit until a month after the time when warrants for the collection of delinquent assessments had been ordered by the council. In other words, only after payment had been made by a portion of the taxpayers did these plaintiffs ask any relief.

Without continuing this inquiry any further, we are of the opinion that, notwithstanding the doubt arising from the lack of express provision for notice in ordinance 5068, it cannot be held, in view of the notice which was given, of the construction placed upon this ordinance by the council thereafter, and of the approval by the Supreme Court of the proceedings as in conformity to the laws of the State, that the provisions of the federal Constitution, requiring due process of law, have been violated.

The judgment is, therefore,                          *Affirmed.*

MR. JUSTICE FIELD did not hear the argument or take part in the decision of this case.