Decided 10 July, 1899.

## HOOD RIVER LUMBERING CO. v. WASCO COUNTY.

[57 Pac. 1017.]

Constitutional Law—Due Process of Law—Eminent Domain.—Notice to the land owner whose property is to be appropriated for public use, and an opportunity to be heard as to whether his property shall be taken at all, are necessary elements of every lawful exercise of the right of eminent domain—without them there is not "due process of law."

Test of Constitutionality.—The constitutionality of a statute must be determined by what can be done under it, not by what was actually done in the case under consideration.

Appropriation of Private Property—Notice to Owner.—Laws, 1889, p. 105, § 1, providing that the county court may declare an unnavigable stream lying within the county a public highway for the floating of logs and transportation of lumber, and direct the widening, deepening, and other improvements of such stream so as to render it fit for the purposes intended; and section 2, providing that in case any land owner does not consent to such use

of the stream and the making of improvements, with the right to pass along the banks for the purpose of doing the work and properly managing the use of such highway, and the taking, at a fair rate of compensation, of such timber and other materials along the bed and banks of the stream as may be necessary for the construction and repair of the improvements, and grant the same to the county on application, the county court, on failure to purchase such rights, shall appoint viewers to examine such stream, and allow damages, if any, to the owner, and such owner may appeal from the allowance of damages within twenty days after the adoption by the court of the report—are void, so far as they authorize the taking of private property without due process of law, since no provision is made for notice to the nonconsenting land owner of the proceedings for appropriation, or an opportunity given him to defend as a matter or right.

From Wasco : W. L. Bradshaw, Judge.

In 1889 an act was passed by the legislature entitled "An act authorizing the county courts of the several counties of this state to declare unnavigable streams highways for the floating of logs and timber, and provide for the improvement and use of the same:" Laws, 1889, p. 105. The first section provides that upon application of any individual, association or corporation interested, the county court may, by order, declare all or any portion of any river or stream lying within the county, which has not been declared by law to be navigable, and which is not, in fact, navigable for commercial purposes, a public highway for the floating and transportation of logs, timber, and lumber, and the same shall thereupon become and be a public highway for such purpose, and may, at the same time, or at any time thereafter, direct the widening, deepening, and other improvement of such stream, so as to render it fit and suitable for the purposes intended. Section 2 provides that : "In case any owner of land adjacent to or across which such stream flows does not consent to the use of the stream for such purpose, and the making of the improvements directed, with the right to pass along the banks of the stream for the purpose of doing the work and keeping the same in repair and properly superintending and managing the

use of such highway for the purpose intended, and the taking at a fair rate of compensation of such timber and other materials along the bed and banks of the stream as may be necessary for the construction and repair of the improvements and grant the same to the county by suitable instrument in writing on application, the county court may contract for and purchase any or all of such rights, or, if the same cannot be purchased at a satisfactory price, shall, when petitioned so to do by any resident of the county, appoint three disinterested householders of the county as viewers of such stream and land adjacent thereto which is proposed to be used or appropriated for the purpose of such improvements, and it shall be the duty of said viewers appointed as aforesaid [to] visit and examine such stream and land at such points as shall be directed by the county court, and report to the county court in writing, at such time as shall be fixed in the order appointing them, as to whether damages should be allowed to the owner of the land proposed to be appropriated for the appropriation thereof to the purposes aforesaid, and, if so, the amount thereof, and such report, when approved by the county court, shall be final unless appealed from as hereinafter provided, and if damages are allowed to any such owner by said county court, such damages, together with the costs of the viewers, shall be paid to such owner before such stream or land can be appropriated to the purpose of such improvements. Any person who may conceive himself aggrieved by the assessment of damages as above described may, within twenty days after such report is adopted by the county court, appeal therefrom to the circuit court of the proper county. Such appeal shall be taken to the circuit court in the same manner as appeals from justices of the peace, and if the appellant shall fail to recover a judgment more favorable than the report

appealed from he shall pay all costs of the appeal." The
remainder of the act has reference to the leasing of the
stream by the county court, and has no bearing upon the
question to be determined upon this appeal.

In pursuance of the provisions of the act, the County
Court of Wasco County on January 16, 1896, declared
Hood River and its several branches to be a public high-
way, and subsequently, being unable to obtain the
consent of the plaintiff, the Hood River Lumbering
Company, across whose premises the stream flows, to
its use for the purposes contemplated, appointed viewers
on the petition of a resident of the county to visit and
examine the stream and the land of the plaintiff, and
report to the courts "as to whether damages should be
allowed to" it, "and if so, the amount thereof." On
December 20, 1898, the viewers made their report, assess-
ing the plaintiff's damages at $2,040, which was on the
same day confirmed, and an order and judgment entered
appropriating to Wasco County a right of way over the
certain described property of the plaintiff "for a public
highway for the floating and transportation of logs,
timber, and lumber, and for the purpose of widening,
deepening, straightening, removing obstructions from,
building of dams and booms in, and otherwise improv-
ing the stream of Hood River at the points hereinafter
referred to, so as to render the same fit and suitable for
the purpose of said highway, and with the right to pass
along the banks of said stream for the purpose of doing
the work, keeping the same in repair, and properly super-
intending and managing the use thereof, and also for the
taking, at a fair rate of compensation, of such timber
and other materials along the bed and banks of said
stream as may be necessary for the construction and
repair of such improvements." The plaintiff corpora-

tion thereupon sued out a writ of review to the circuit court, and, the proceedings of the county court having been there affirmed, it appeals to this court.

Reversed.

For appellant there was an oral argument by *Mr. Bela S. Huntington,* with a brief over the name of *Huntington & Wilson* to this effect :

No notice is given to the land owner of the proceeding, and no opportunity to be heard in defense of his rights as to the necessity for the improvement, or upon the question of damages, unless the effort to obtain consent or purchase the property and rights can be construed to be notice, and the right to appeal from the judgment is a right to be heard upon the question of damages. Such a proceeding is a depriving of property without due process of law : *Grady* v. *Dundon,* 30 Or. 333 ; *Burns* v. *Multnomah County,* 15 Fed. 177 ; Elliott, Roads & Sts. pp. 150, 151 ; Cooley, Const. Lim. (6 ed.) pp. 126, 208, 209 ; Lewis, Em. Dom. § 368 ; *Chicago, B. & Q. R. R. Co.* v. *City of Chicago,* 166 U. S. 226 ; *Pennoyer* v. *Neff,* 95 U. S. 714.

Notice other than the seizure of the property is essential, and an appearance is not the equivalent of a notice emanating from some official source : Lewis, Em. Dom. § 365 ; *Grady* v. *Dundon,* 30 Or. 333 (47 Pac. 915); *Woodruff* v. *County of Douglas,* 17 Or. 314 (21 Pac. 49); *Minard* v. *Douglas County,* 9 Or. 206.

If, then, notice, to be notice in the legal sense, must be a formal process served in a manner·and emanating from a source prescribed by statute, from what source would the notice emanate, and how and by whom is it to be served in a proceeding under this statute? A notice not authorized by law is no notice ; the law itself must prescribe the notice : *Stewart* v. *Palmer,* 74 N. Y. 183 (30

Am. Rep. 289); *Kuntz* v. *Sumption*, 117 Ind. 1 (2 L. R. A. 655); *State* v. *Lindell Hotel Co.*, 9 Mo. App. 455 ; *South Platte Land Co.* v. *Buffalo County*, 7 Neb. 258 ; *State* v. *Guilbert*, 56 Ohio St. 575 (47 N. E. 551).

For respondent there was an oral argument by *Mr. W. H. Wilson*, with a brief over the names of *Mr. Wilson* and *A. A. Jayne*, District Attorney, to this effect :

This statute cannot be complied with without the owner having notice over and over again of the proceedings against him. If these requirements are not in themselves sufficient, then such notice as the constitution requires will be implied, and must be given. The statute itself is not the only law. The Fourteenth Amendment to the Constitution of the United States is as much a part of the law of Oregon as the statute in question ; the two must be taken together, and the requirements of both must be met : *Kendall* v. *Post*, 8 Or. 141 ; *Minard* v. *Douglas County*, 9 Or. 206 ; *Paulson* v. *City of Portland*, 16 Or. 450 (1 L. R. A. 673, 19 Pac. 450); same case affirmed on appeal, 149 U. S. 30 (13 Sup. Ct. 750); *Wilson* v. *City of Salem*, 24 Or. 504 (34 Pac. 9); *Branson* v. *Gee*, 25 Or. 462 (24 L. R. A. 355, 36 Pac. 527); *Cherry* v. *Lane County*, 25 Or. 487 (36 Pac. 531); *Swan* v. *Williams*, 2 Mich. 441 ; *Strachan* v. *Brown*, 39 Mich. 169 ; *Board of Com'rs* v. *Board of Comr's*, 9 Colo. App. 368 (48 Pac. 675); *Gilmore* v. *Hentig*, 33 Kan. 156 (5 Pac. 791); *Kuntz* v. *Sumption*, 117 Ind. 1 (2 L. R. A. 655); *Ullman* v. *Baltimore*, 72 Md. 787 (11 L. R. A. 226); Elliott, Roads & Sts. 151 ; Lewis, Em. Dom. § 368.

Mr. Justice Bean, after stating the facts in the foregoing language, delivered the opinion of the court.

Several objections are made to the validity of the proceedings in the county court, but the principal one is

that the provisions of the statute under which they were had is unconstitutional and void because it authorizes the taking of private property for public use without due process of law, since it makes no provision for notice to the nonconsenting landowner of the proceedings for the appropriation of his property, and gives him no opportunity to be heard as a matter of right. It is universally recognized that property cannot be taken by the right of eminent domain without some notice to the owner, and some opportunity to be heard in defense of his rights. An act of the legislature arbitrarily taking private property for public use, or authorizing it to be so taken, without any notice to the owner, would not be upheld. In such case there would be an absence of that due process of law which is not only guaranteed to the citizen by the Fourteenth Amendment of the Constitution of the United States, but is founded on principles of natural justice older than written constitutions. "The power to appropriate private property to public use," says Mr. Chief Justice Moore, "is derived from the legislative assembly, which may prescribe the mode of its exercise," but "cannot dispense with notice of some kind to the owner of the property affected by the location of a public highway, for to do so would be a violation of the Fourteenth Amendment of the Federal Constitution, and tantamount to the deprivation of property without due process of law. * * * Without notice of some kind, the county court can obtain no jurisdiction of the person of the owner of real property in condemnation proceedings, and any order or judgment rendered without notice must necessarily be void :" *Grady* v. *Dundon*, 30 Or. 337 (47 Pac. 915).

But, while it is everywhere admitted that one cannot be deprived of his property without due process of law, neither the federal nor state constitutions have made

any attempt to define that term, nor have the courts been able to give a definition covering all possible cases ; and the remark of Mr. Justice MILLER, in *Davidson* v. *New Orleans*, 96 U. S. 101, that it remains "without that satisfactory precision of definition which judicial decisions have given to nearly all the other guaranties of personal rights found in the constitutions of the several states and the United States" is as true today as it was when uttered by that distinguished jurist. The courts are still disposed to follow his suggestion, and to determine each case, as it arises, "by the gradual process of judicial inclusion and exclusion as the cases presented for decision shall require, with the reasoning on which such decisions may be founded." The numerous attempted definitions of "due process of law" to be found in the books, when summed up, amount at last to but different expressions of the principle that every one is entitled to have notice of any proceeding by which his life, liberty, or property may be affected, and to be admitted to make a defense in a proceeding which, following the forms of law, is adapted to the nature of the case, and is in conformity with natural and inherent justice. Thus far the authorities are in unison, and the case in hand presents no special difficulty ; but when we come to the question as to what constitutes notice, within the requirements of this rule, we are confronted with a wide diversity of opinion among courts and text writers. The authorities seem to range from those holding that, where no notice is provided for in the statute, one is necessarily implied, and may be given in almost any manner that will call the property owner's attention to the proceedings, to those which hold that the law itself must prescribe the kind of notice, and how it shall be served. This conflict is, however, more apparent than real, and is mainly due to the terms of the respective statutes under consideration, and the interest

involved in the particular case, as well as the subject-matter of the litigation; for, as said by Mr. Justice BRADLEY in his concurring opinion in *Davidson* v. *New Orleans*, 96 U. S. 101: "In judging what is due process of law, respect must be had to the cause and object of the taking,—whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these; and, if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law,' but if found to be arbitrary, oppressive, and unjust, it may be declared to be not 'due process of law.' "

Coming then to the case in hand, we are called upon to determine whether the course of proceeding for the taking of private property without the consent of the owner, provided in the statute under consideration, is "according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights," and which Mr. Justice FIELD says, in *Pennoyer* v. *Neff*, 95 U. S. 714, is essential to due process of law, or whether it is "arbitrary, oppressive, and unjust." If the former, the statute is valid; and if the latter, void. Looking at its provisions somewhat in detail, it will be noted that it authorizes the taking of the right to the use of the bed and channel of the stream; the building of dams, and the consequent right to overflow lands outside the channel; the right to cut through adjacent lands for the purpose of straightening, widening, or deepening the stream; to pass along the banks for the purpose of doing the necessary work to make the stream navigable and keeping it in repair, and properly superintending and managing the use of the highway (an easement of indefinite extent); the building and maintaining of booms for the handling of property to be transported, and the taking of such

timber and other materials along the beds and banks as may be necessary for the construction and repair of the improvement; and all this without any provision for notice to the owner, or without giving him any right to a hearing until after a final judgment has been entered, taking his property and appropriating it to a public use, and then only the right, by an appeal, to be heard upon the question of damages alone. Under this statute he is not entitled to notice of any kind that a proceeding for the purpose is to be instituted or is pending, unless the mere fact of an effort to obtain his consent or a grant from him of such rights can be construed to be notice. But the attempted negotiation does not inform him of the time when the proceedings for the condemnation of his property are to take place, or the nature thereof, or afford him an opportunity to make any defense thereto. It is true, an appeal is authorized from an order approving the report of viewers appointed to assess damages; but this right is not only confined to the question of damages alone, but must be exercised within twenty days after the order is made, or it is lost, and yet the statute provides for no notice to him whatever of any of the proceedings. So that it is possible for the petition to be filed, the viewers appointed, the amount of property to be taken determined, the damages to the owner assessed, a judgment entered appropriating the property, and the time for an appeal to have expired, without the knowledge of the property owner. Certainly such an arbitrary and unjust proceeding, and one so utterly in disregard of the rights of private property, cannot be declared to be "due process of law," according to any of the definitions to be found in the books.

After a careful examination of the question, we are satisfied that the better rule — the one supported by the great preponderance of authority — is that where a

statute like the one under consideration authorizes the taking of private property for public use, and undertakes to prescribe the course of procedure which shall be followed, it must provide for notice to the nonconsenting landowner, and give him an opportunity to be heard in defense of his rights. Judge Elliott says: "Notwithstanding the diversity of opinion upon the question whether the failure to provide for notice will or will not make the statute inoperative, it seems clear to us, on principle, that a statute which makes no provision for notice cannot be deemed effective. Such a statute may not, perhaps, be absolutely void, since it is probably true that the defect might be remedied by a supplemental or amendatory statute; but, however this may be, as long as it stands without a provision for notice it is inoperative, and will not justify the seizure of private property. It is everywhere agreed that a statute which fails to make proper provision for compensation is ineffective, because provision for compensation is an indispensable condition to the right to exercise the power; and the principle declared in the decisions establishing that doctrine applies to the element of due process of law, for it is quite as essential that the statute should provide for due process of law as for compensation. A notice not provided for by law is, in truth, no notice at all, and it is the province of the legislature, and not of the courts, to enact laws which shall prescribe the notice that brings parties into court. If no notice is provided by law, no effective notice can be given, since a notice not authorized can have no legal force, and, without a notice authorized by some valid statute, there can be no due process of law. The courts have no right to supply the omission by interpolating provisions, for it is their duty to give effect to the statutes as they are written, and they cannot amend imperfect enactments:" Elliott, Roads &

Sts. 151.   And Mr. Lewis, in his work on Eminent Domain, after an examination and review of the authorities, and especially those holding that a statute not providing for notice is valid, on the ground that, whether provided for or not, it must be given, says : "It seems to us that these cases go too far in the direction of judicial legislation.  If the statute prescribes no notice, what notice is to be given?  Some of the cases say it must be a notice prescribed by an order or rule of the court ; others, that it is left to the court to see that proper notice is given ;  and still others adopt, by analogy, the provisions of similar statutes, but the majority do not attempt to define what the notice should be.  *  *  *·  It seems to us that it is just as incumbent upon the legislature to provide for notice as to provide for compensation.   Both are conditions to the exercise of the power. It is conceded that a law which purports to authorize the taking of property for public use, but makes no provision for compensation, is nugatory.   Why may not the obligation to make compensation be implied and enforced by the courts, as well as the obligation to give notice? There is really but one logical and consistent position in the matter, and that is that a statute that does not provide for notice is invalid :"   Lewis, Em. Dom. § 368.

And in the noted case of *Stuart* v. *Palmer*, 74 N. Y. 183, in which the doctrine of "due process of law," as applicable to a statute authorizing an assessment for opening a highway, received an exhaustive and learned discussion, Mr. Justice EARL, in speaking for the entire court, said : "The constitution sanctions no law imposing such an assessment without a notice to, and a hearing or an opportunity of a hearing by, the owners of the property to be assessed.   It is not enough that the owners may by chance have notice, or that they may, as a matter of favor, have a hearing.   The law must require notice to

them, and give them the right to a hearing and an opportunity to be heard. It matters not, upon the question of the constitutionality of such a law, that the assessment has in fact been fairly apportioned. The constitutional validity of the law is to be tested, not by what has been done under it, but by what may by its authority be done. The legislature may prescribe the kind of notice, and the mode in which it shall be given, but it cannot dispense with all notice." If this is the rule by which the constitutionality of a law authorizing an assessment supposed to be founded on a corresponding benefit to the land owner is to be determined, clearly a statute for the taking of property by right of eminent domain which does not comply with such test is unconstitutional and void, when it is remembered that due process of law, as applied to assessments, does not necessarily imply or require the right to such notice and hearing as is considered to be essential to the validity of the proceeding of judicial tribunals : *Kentucky Railroad Tax Cases*, 115 U. S. 321 (6 Sup. Ct. 57).

The decisions of this court upon the validity and constitutionality of acts providing for the assessment of property and levy of taxes for general purposes, or for assessments for opening or improving streets in municipalities, or the laying of sewers, or the taking of material by road supervisors for the repair of public highways, are not authority in the present case, except in so far as they may illustrate the application of the doctrine of due process of law to a given state of facts. It is conceded in all of these cases that notice to the party to be affected is essential, and the point decided in each of them was whether or not such a notice had been provided for by the law under which the proceedings were had. We are here, however, to deal with an act providing for the taking of private property of an individual without his consent

under the extraordinary power of eminent domain, and which provides the tribunal by which such power shall be exercised, and the method of procedure to be followed in its exercise ; and the test of its validity is whether it preserves to the citizen the right of due process of law guaranteed to him by the constitution. This, in our opinion, must be determined from the provisions of the act itself. Cases like *Paulson* v. *Portland*, 149 U. S. 38 (13 Sup. Ct. 750), and *Wilson* v. *City of Salem*, 24 Or. 504 (34 Pac. 9, 691), are wholly unlike the case at bar, because they involve the validity of proceedings by municipal corporations in improving streets and laying sewers under a general grant of power. It was held in these cases that the city charters were constitutional and valid, although they made no provision for notice to the property owners, but this holding was expressly put upon the ground that "the city is a miniature state—the council is its legislature, the charter is its constitution ; and it is enough if, in that, the power is granted in general terms, for, when granted, it must necessarily be exercised subject to all limitations imposed by constitutional provisions, and the power to prescribe the mode of its exercise is, except as restricted, subject to the legislative discretion of the council :" Mr. Justice Brewer, in *Paulson* v. *Portland*, 149 U. S. 38 (13 Sup. Ct. 753).

But the power granted by the statute under consideration is vested in, and is to be exercised by, the county court, acting in a judicial and not a legislative capacity. It has no authority to prescribe the mode of exercising the power granted, or to supplement the statutory method of procedure. It can only execute the law according to its terms, and, as the statute undertakes to provide the entire method of procedure, it necessarily follows that, unless in its several provisions it is in conformity with the constitution, and provides for due process of law, all

proceedings had thereunder are void. And the fact that in this particular case the plaintiff had knowledge of the proceedings, and appeared in the county court, is of no consequence in determining the question. The constitutionality of a statute must be determined by what can be done under it, and not by what actually takes place. If, by strict compliance with all its requirements, the property of an individual can be taken from him without due process of law, the act is void. We are quite clear that the act under consideration is inoperative and void, so far as it authorizes the appropriation of private property without the consent of the owner, because it makes no provision for notice to him of the proceedings, and gives him no opportunity to defend as a matter of right. It follows from these views that the judgment of the court below must be reversed, and the cause remanded with directions to vacate and annul the proceedings of the county court.        REVERSED.