BOUSLOG ET AL. *v.* CITY OF GULFPORT.

[72 South. 896.]

CONSTITUTIONAL LAW. *Municipal corporations. Due process of law. Notes. Special assessments. Statutes.*

Chapter 128, Laws 1916, being an act to authorize boards of supervisors and the mayor and board of aldermen or other governing bodies of municipalities to erect sea walls, breakwaters, and bulkheads for protection of public roads or streets extending along the beach or shores of any body of water and to lay special assessments on abutting property not to exceed one-half

of the cost of construction, and to issue bonds therefor, and empowering the mayor and commissioners of the city to prorate the assessment without any express rule therefor, and which does not provide for notice to owners either personally or by publication, to afford opportunity of hearing on and objection to the assessments, though section 7 of the act permits any person aggrieved by the order of any board to take bill of exceptions to the circuit court for trial on the record without a jury and in the absence of any such provision in the general law, is violative to both the state Constitution providing that no one shall be deprived of property, etc., except by due course of law, and that every person for an injury done him in his lands, etc., shall have a remedy by due course of law and to the similar provisions of the Federal Constitution; and the court could not say that the power granted to boards, etc., impliedly carried the right to prescribe the notice to be given nor that the bond issue could be upheld, regardless of the legality of the assessments.

Appeal from the chancery court of Harrison county. Hon. W. M. Denny, Jr., Chancellor.

. Suit by M. P. Bouslog and others against the city of Gulfport. From a decree for defendant sustaining a demurrer and dismissing the bill complainants appeal.

The facts are fully stated in the opinion of the court.

. *Hanum Gardner, John L. Heiss* and *L. M. Evans,* for appellant.

*J. L. Taylor,* for appellee.

Stevens, J., delivered the opinion of the court.

The appeal in this case presents for decision the constitutionality of chapter 128, Laws of 1916, being an act to authorize boards of supervisors and the mayor and board of aldermen or other governing bodies of municipalities to erect sea walls, breakwaters, and bulkheads for protection of public roads or streets extending along the beach or shore of any body of water, and to levy special assessments and to issue bonds for the construction thereof. Appellants, as

taxpayers in and citizens of the city of Gulfport, exhibited their bill of complaint against the mayor and board of commissioners of the city of Gulfport, to restrain the issuance and sale of bonds in the sum of two hundred thousand dollars, which the said city is preparing to execute and offer for sale in pursuance of the terms and provisions of the act in question. In their bill, among other questions raised, is the averment that the act is unconstitutional and void for the reason that it attempts to authorize a special assessment of benefits against property adjacent to or abutting upon the proposed sea wall, and thereby to create or fix a lien upon complainants' property without giving to the complainants and other property owners a hearing, and without providing for any notice whatever. A demurrer interposed by appellees was sustained by the chancellor and from the decree dismissing the bill appellants prosecute this appeal.

The bill also avers that the act violates section 80 of the Constitution, in that it does not place any restriction upon the right of the board of supervisors or municipal authorities as to the size or amount of the bond issue or expenditure, and also that the municipal authorities have no power to exercise the right of eminent domain in acquiring the necessary land or right of way upon which to construct the sea wall, and especially the character of sea wall called for by the plans and specifications adopted by appellees in this case. It is unnecessary for us to notice any of the points argued by counsel for appellants, except the constitutional question which is presented by the failure of the statute to provide for any kind of notice to be given the owner, or to afford the property owners an adequate opportunity to be heard when the board assesses the benefits. The general scheme of this statute, briefly stated, is to authorize boards of supervisors, in case of a public road, and municipal authorities in case of a street, to construct a permanent sea

wall or breakwater to protect the highway, and, if the improvement necessitates an unusual expenditure of money, to provide the necessary funds by means of a general bond issue of the county or city, as the case may be, and to assess the abutting property owners with the benefits or enhanced value to their property produced or conferred by the improvement, not to exceed, however, one-half of the cost of the construction. In other words, the purpose of the act is to require adjacent property owners to pay one-half of the cost, and thereby to reimburse the county or city one-half of any bond issue under the act. So, in the instant case, the abutting property owners will be expected to defray one-half of the cost of the sea wall here proposed for the city of Gulfport. The complainants, amongst others, as interested taxpayers, will have a lien fixed upon their property unless the relief prayed for in this case is granted. The act authorizes special benefits to be assessed, not only against the adjacent real estate extending a thousand feet back from the water's edge, but also the assessment of any special benefit conferred upon telegraph, telephone, and pipe lines existing along the street in question and any other property of any kind that happens to be specially benefited. In assessing these benefits the mayor and commissioners of the city of Gulfport are empowered by the act to prorate the assessments as they deem just and proper, and no rule or guide whatever is given by the express terms of the act. This brings us then to a consideration of the failure of this law to provide for notice to the adjacent property owners.

We reluctantly, but confidently, regard the act here under review as obnoxious to both our state and Federal Constitutions. Nowhere in this act from begining to end is any provision for or reference to any kind of notice, either personal or by publication. It is true that section 7 of the act provides that "any person aggrieved by the order of any board under this act"

may take a bill of exceptions, showing the particular facts and rulings of the board complained of, but the trial in the circuit court on appeal is restricted to the face of the record without the intervention of a jury. To be effectual, the party appealing from the order of the board would be required to incorporate in his bill of exceptions all the testimony offered before the board, as well as any pleadings or rulings of the board, and have this special bill of exceptions signed in a summary way. Back of all this, however, is the right of the aggrieved party to notice of the time and place when and where the board undertakes to assess benefits against his property and a reasonable opportunity to file objections and produce all needed testimony. There is no provision, either by this act or by any general law, fixing the time or the meeting at which the board by assessing benefits will render judgments against property owners. It is obvious that by the literal and express terms of the statute no notice whatever is required. By a literal compliance with the statute the board can proceed to assess the benefits, and thereby impose a lien upon complainants' property for a large and unusual tax, without giving any notice, and when the board has prorated or fixed the assessments and adjourns, its orders operate as a judgment against the property owners affected by the act. In fixing these assessments the board acts judicially, and its judgment, unless appealed from, is final. Our state Constitution expressly provides that no person shall be deprived of life, liberty, or property except by due course of law, and that:

"Every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law."

It is well known that similar provisions are embodied in our Federal Constitution. A judicial inquiry and the rendition of judgment without notice or opportunity to be heard is condemned by all the authorities. The

right to be heard in a case of this kind is a sacred right, older than our written Constitutions, and the preservation of which is simply further and permanently guaranteed by these well-known provisions of our federal and state Constitutions. The decisions of all the courts of the land conspire to safeguard this as one of the primary and fundamental rights of freemen.

Is this right then recognized and adequately protected by the act in question? We are asked to write into the statute a notice by implication. Counsel for appellees frankly concede that reasonable notice is necessary, and contend that, inasmuch as the power here granted is one conferred upon boards of supervisors and municipal boards having large administrative and judicial powers, the granting of the power carries with it the right by implication to prescribe the kind and character of notice to be given. To this argument, persuasive as it is, we are unable to give our assent. We wish it here kept in mind that no provision of the general law anywhere grants to the board the right itself to determine the kind or character of notice. If we hold that the act in question gives the power by necessary implication, then this court plainly and manifestly will be guilty of judical legislation. It will be necessary for us to supply or interpolate into the act a vital and necessary element. And when we do so, what kind of notice will the board or the court supply? It is a matter of common knowledge that our Mississippi seacoast is largely a pleasure and health resort; that the beach property is owned by individuals and corporations; and that the interests of minors, trustees, guardians, executors, and non-residents will be directly affected by the enforcement of the act. What notice then will the board give to nonresidents, corporations, and persons under disability? The mayor and commissioners of Gulfport might prescribe one kind of notice and the board of supervisors of Harrison county a different notice.

There could be as many kinds of notice as there are municipalities and counties adopting the act. It is reasonably certain that some property owners cannot be reached except by publication, and in the making of this publication what provision will the board make looking toward placing a copy of the advertisement before the nonresident? A notice which is not authorized by this statute or any other general provision of law could not be classed as a legal notice. It would be a self-provised, homemade product, without the sanction of the Legislature and without uniformity. The employment of this act would entail large and unusual expense, and various kinds of property, including the homes of many citizens, would bear a heavy annual tax to defray the expense. Their right to notice and a hearing is a right founded upon natural justice.

Our court in the early case of *Donovan* v. *Mayor and Council of Vicksburg,* 29 Miss. 247, 64 Am. Dec. 143, declared unconstitutional and void an ordinance by which the city marshal of Vicksburg was authorized and directed to seize and sell all hogs running at large within the limits of the city, without providing for notice to the owner. Mr. Justice HANDY, speaking for the court, says:

"No process is required to be issued for the seizure or the sale, nor notice given to the owner, either actual or constructive, nor is there . . . opportunity given to him to appear and show cause, under any circumstances, why the ordinance should not be enforced against his property. The entire proceeding is summary, and calculated to deprive the party of his property in all cases without notice or trial. . . . Such being the oppressive use to which laws and ordinances of this nature may be employed, the Constitution has wisely interposed its interdict against their enactment, by the provision that no person 'can be deprived of his life, liberty, or property, but by due

course of law.' . . . If such a power had been expressly conferred by the act of the legislature incorporating the city, it would have been obnoxious to the provisions of the Constitution and void; and much less can it be justified under any general powers conferred upon the corporation by their charter."

One of the leading American cases holding as unconstitutional and void a law, imposing an assessment for local improvements without notice to or a hearing granted the owner is that of *Stuart* v. *Palmer*, 74 N. Y. 183, 30 Am. Rep. 289. The learned opinion of Earl, J., in that case has been frequently quoted with approval in many of the subsequent American cases on this subject, and we add our tribute to the words employed by this jurist, and especially to the following:

"The legislature can no more arbitrarily impose an assessment from which property may be taken and sold than it can render a judgment against a person without a hearing. It is a rule founded on the first principles of natural justice, older than written Constitutions, that a citizen shall not be deprived of his life, liberty, or property without an opportunity to be heard in defense of his rights, and the constitutional provision that no person shall be deprived of these 'without due process of law' has its foundation in this rule. This provision is the most important guaranty of person rights to be found in the federal or state Constitution. It is a limitation upon arbitrary power, and is a guaranty against arbitrary legislation. No citizen shall arbitrarily be deprived of his life, liberty, or property. This the legislature cannot do nor authorize to be done. 'Due process of law' is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judical, administrative, or executive in its nature. *Weimer* v. *Bunbury*, 30 Mich. 201. This great guaranty is always and everywhere

present to protect the citizen against arbitrary interference with these sacred rights.''

"It is very generally held that property owners are entitled to notice of an assessment and a hearing thereon, and that an improvement statute which makes no provision for notice and hearing is unconstitutional." 28 Cyc. 1145, and authorities in the footnote.

"The concensus of opinion is that it is necessary to the validity of a special assessment that somewhere along the line of the proceedings, notice be given to the owner and an opportunity afforded him to be heard in opposition or defense, and that statutes which make no provision for notice are unconstitutional." Hamilton on Law of Special Assessments, par. 145, 100, 101; *Stuart* v. *Palmer, supra; Garvin* v. *Daussman,* 114 Ind. 429, 16 N. E. 826, 5 Am. St. Rep. 637; *Violett* v. *Alexandria,* 92 Va. 561, 23 S. E. 909, 31 L. R. A. 382, 53 Am. St. Rep. 825; Gray on Limitation of Taxing Power, par. 1165.

Our court in *Nugent* v. *Mayor & Aldermen of Jackson,* 72 Miss. 1040, 18 So. 493, quoted with approval Elliott on Roads and Streets, saying:

"The only defensible rule is that which requires that at some stage of the proceedings, before the judgment or decision becomes conclusive, the landowners should have notice, or the opportunity to be heard."

It has indeed been the uniform policy of this state for near a century to provide notice in all cases where private property is taken or damaged for public use, and likewise in all cases authorizing local improvements. This is evident by the well-known provisions for giving notice of the laying out or changing of public roads, in our drainage laws, in the building of sidewalks and paved streets within our municipalities, and in all eminent domain proceedings.

Legislation similar to this was held unconstitutional and void in *Ulman* v. *Baltimore,* 72 Md. 609, 21 Atl. 711, 11 L. R. A. 224, where the court observes:

"But it has been suggested that this order appealed from should be affirmed because, even had opportunity been given to the appellant to appear and be heard before the tax was imposed, no different result could have been reached. To this we cannot agree. The constitutional guaranty belongs to the individual by right, and not by the mere favor of the legislature or the sufferance of judical tribunals. It is the duty of the courts to see that this right is not invaded under any pretext whatever when the subject is before them. Its value as a safeguard would speedily dwindle away, or, at least, become exceedingly precarious, if the privilege to assert it were made to depend upon the belief or the opinion of a judge that it would, if asserted, be available. It is a right of which a citizen cannot be deprived, and he may appeal to it whatever others may think as to the result of such an appeal."

In *Violett* v. *Alexandria,* 92 Va. 561, 23 S. E. 909, 31 L. R. A. 382, 53 Am. St. Rep. 825, Cardwell, J., speaking for the court, delivered a splendid opinion, reviewing the authorities and holding that an assessment for local improvement exacted by a municipal corporation, be void unless the person has an opportunity to appear and contest the legality, justice, and correctness of the proposed assessment. The case quotes with approval from Judge Cooley, as follows:

"In discussing the question whether the right to be heard in tax cases is a right which is indefeasible (Cooley, Tax'n [1st Ed.] 265, 266), Judge Cooley says: 'We should say that notice of the proceedings in such cases, and an opportunity for a hearing of some description were matters of constitutional right. It has been customary to provide for them as a part of what is "due process of law" for these cases; and it is not to be assumed that constitutional provisions, carefully framed for the protection of property, were intended, or could be construed, to sanction legislation under which officers might secretly assess one for any amount

112 Miss.—13

in their discretion, without giving him an opportunity to contest the justice of the assessment. It has often been very pointedly and emphatically declared that it is contrary to the first principles of justice that one should be condemned unheard; and it has also been justly observed of taxing officers, that "it would be a dangerous precedent to hold that any absolute power resides in them to tax as they may choose, without giving any notice to the owner. It is a power liable to great abuse," and, it might safely have been added, it is a power that, under such circumstances, would be certain to be abused. "The general principles of law applicable to such tribunals oppose the exercise of any such power.'" See, also, authorities cited in notes 1, 2, p. 266. Due process of law requires that he [the land owner] shall have a chance to interpose objection to the validity of the tax, or to the contention that his land is liable for it, or to the manner of assessing or collecting it, at some stage of the proceedings, before his property is irrevocably gone; and this before some authority competent to afford relief in case of invalidity or injustice. Mr. Black, in note to case of *Read* v. *Dingess,* 8 C. C. A. 398.''

This holding is reaffirmed by that court in *Norfolk* v. *Young,* 97 Va. 728, 34 S. E. 886, 47 L. R. A. 574. We refer also to note, page 1201, to *Chicago, M. & St. P. R. Co.* v. *Janesville,* 28 L. R. A. (N. S.) 1124.

Counsel for appellees rely upon *Paulsen* v. *City of Portland.* 149 U. S. 30, 13 Sup. Ct. 750, 37 L. Ed. 637. There is a difference between that case and the case at bar. In that case the judgment of the city of Portland was attacked as unconstitutional because it made no provision for notice to the property owners affected by the laying of sewers and making improvements of this character under a general grant of power. The distinction that appeals to us is drawn by BEAN, J., in *Hood River Lumbering Co.* v. *Wasco County,* 35 Or. 498, 57 Pac. 1017, where the court observes:

"Cases like *Paulsen* v. *Portland,* 149 U. S. 38, 13 Sup. Ct. 750 [37 L. Ed. 637] and *Wilson* v. *City of Salem,* 24 Or. 504, 34 Pac. 9, 691, are wholly unlike the case at bar, because they involve the validity of proceedings by municipal corporations in improving streets and laying sewers under a general grant of power. It was held in these cases that the city charters were constitutional and valid, although they made no provision for notice to the property owners, but this holding was expressly put upon the ground that: 'The city is a miniature state—the council is its legislature; the charter is its constitution—and it is enough if, in that, the power is granted in general terms, for, when granted, it must necessarily be exercised subject to all limitations imposed by constitutional provisions, and the power to prescribe the mode of its exercise is, except as restricted, subject to the legislative discretion of the council.' Mr. Justice Brewer, in *Paulsen* v. *Portland,* 149 U. S. 38, 13 Sup. Ct. 753 [37 L. Ed. 637]. But the power granted by the statute under consideration is vested in, and is to be exercised by, the county court, acting in a judicial, and not a legislative, capacity. It has no authority to prescribe the mode of exercising the power granted, or to supplement the statutory method of procedure. It can only execute the law according to its terms, and, as the statute undertakes to provide the entire method of procedure, it necessarily follows that, unless in its several provisions it is in conformity with the Constitution, and provides for due process of law, all proceedings had thereunder void. And the fact that in this particular case the plaintiff had knowledge of the proceedings, and appeared in the county court, is of no consequence in determining the question. The constitutionality of a statute must be determined by what can be done under it, and not what actually takes place. If by strict compliance with all its requirements, the property of an

individual can be taken from him without due process of law, the act is void.''

The same distinction is evidently drawn by CARD-WELL, J., in *Violett* v. *Alexandria, supra,* when he says:

''In every case that I have been able to examine which has gone to the supreme court of the United States, and in which the question under consideration was considered, that court has upheld the validity of the laws upon the ground that notice and hearing had been provided for, or held the laws to be unconstitutional and void because notice to the party to be affected and an opportunity to be heard were not provided for'' (citing several authorities from the United States supreme court, including the Paulsen Case).

The requirement for notice has been consistently recognized by numerous decisions of the supreme court of the United States. In the earlier case of *Spencer* v. *Merchant,* 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763, Mr. Justice GRAY says:

''If the legislature provides for notice to and hearing of each proprietor at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law. . . . When the determination of the lands to be benefited is intrusted to commissioners, the owners may be entitled to notice and hearing upon the question whether their lands are benefited and how much.''

In *Londoner* v. *Denver,* 210 U. S. 385, 28 Sup. Ct. 714, 52 L. Ed. 1103, the court says:

''Where the legislature of a state, instead of fixing the tax itself, commits to some subordinate body the duty of determining whether, in what amount, and upon whom it shall be levied, and of making its assessment and apportionment, due process of law requires that at some stage of the proceedings before the tax becomes irrevocably fixed, the taxpayer shall have an opportuni-

ty to be heard, of which he must have notice, either personally, by publication, or by a law fixing the time and place of the hearing.''

In the instant case there is a special grant of power, not only to the governing body of municipalities, but to boards of supervisors, and indeed the option of putting the law into effect in any county is left exclusively with the board of supervisors. It cannot be said that the board of supervisors has the power of legislation, and by exercising a legislative function it can prescribe the kind of notice whereby the statutory power can be lawfully exercised. There is no provision in the act expressly conferring jurisdiction on any court to determine the legality of the assessment. It is also to be observed that in the cases of *Paulsen* v. *Portland* and *Londoner v. Denver, supra,* the decisions of the supreme court of the United States are put largely upon the point that the state courts had looked to the laws then under review, and had adjudged that these laws contained in themselves a sufficient requirement for notice. So, in the decision of the instant case, we are bound to observe the requirements of our own state Constitution, whose provisions we are sworn to uphold; and we find ourselves unable to square the act in question with the Constitution, precedents, and legislative history of our commonwealth. It may be observed that in the sea wall statute passed by the legislature of 1914 ample and express provisions for notice appear. Furthermore, this proposition of the necessity for some express provision for notice has been set at rest by the supreme court of the United States in the very recent case of *Coe* v. *Armour Fertilizer Works,* 237 U. S. 413, 35 Sup Ct. 625, 59 L. Ed. 1027, and other decisions of that court therein quoted from. The court, by Mr. Justice Pitney, declared invalid a Florida statute as violating the due process of law clause of the United States Constitution, and quoted

to approve a portion of the opinion in *Stuart* v. *Palmer, supra.* The court there says:

"Nor can extraofficial or casual notice, or a hearing granted as a matter of favor or discretion, be deemed a substantial substitute for the due process of law that the Constitution requires. In *Stuart* v. *Palmer,* 74 N. Y. 183, 188, 30 Am. Rep. 289, which involved the validity of a statute providing for assessing the expense of a local improvement upon the lands benefited, but without notice to the owner, the court said: 'It is not enough that the owners may, by chance, have notice, or that they may, as a matter of favor, have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard.' The soundness of this doctrine has repeatedly been recognized by this court. Thus in *Security Trust & S. V. Co.* v. *Lexington* [203 U. S. 323] 27 Sup. Ct. 87 [51 L. Ed. 204], the court, by Mr. Justice PECKHAM, said, with respect to an assessment for back taxes: 'If the statute did not provide for a notice in any form, it is not material that as a matter of grace or favor notice may have been given of the proposed assessment. It is not what notice, uncalled for by the statute, the taxpayer may have received in a particular case that is material, but the question is whether any notice is provided for by the statute' (citing the New York case). So, in *Central of Georgia R. Co.* v. *Wright,* 207 U. S. 127, 138, 28 Sup. Ct. 47, 52 L. Ed. 134, 141 [12 Ann. Cas. 463], the court said: 'This notice must be provided as an essential part of the statutory provision, and not awarded as a mere matter of favor or grace.' In *Roller* v. *Holly,* 176 U. S. 398, 409, 20 Sup. Ct. 410, 44 L. Ed. 520, 524, the court declared: 'The right of a citizen to due process of law must rest upon a basis more substantial than favor or discretion.' And in *Louisville & N. R. Co.* v. *Central Stockyards Co.,* 212 U. S. 132, 144, 29 Sup. Ct. 246, 53 L. Ed. 441, 446, it was said: 'The law itself must save the parties'

rights, and not leave them to the discretion of the courts as such.' ''

The writer, having personal knowledge of our seacoast, its demands and possibilities, duly appreciates the necessity for some kind of sea wall protection, and recognizes the necessity for legislation of the kind here attempted. But in laying down precedents that not only control the present but guide the future, the court cannot depart from a principle declared in Magna Charta, consistently and jealously guarded by courts, and effectually embedded as a part of the foundation structure of American jurisprudence.

It will not do to say that the bond issue in question can be upheld regardless of the legality of the special assessments. The primary scheme of the act is to require abutting property owners to bear one-half of the cost, and if the act does not effectually provide a method for raising this one-half of the cost, the issue as a whole should not, in equity and good conscience, be authorized or upheld. It is not only a good roads measure, but essentially a local improvement measure. It is our judgment, therefore, that the act in question must be regarded as inoperative and void, and the decree of the learned chancellor will accordingly be reversed, the demurrer to the bill overruled, and the cause remanded, with leave granted appellees to answer the bill within thirty days after receipt of mandate by the clerk below.

*Reversed and remanded.*