CLENEAY et al. v. NORWOOD et al.

(Circuit Court, S. D. Ohio. January 21, 1905.)

1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—SEWERS—EXEMPTION OF PROPERTY—UNIFORMITY.

Rev. St. Ohio 1892, § 2383, authorized the council of a city to exempt from a special assessment such portion of the frontage of any lot having ;a· greater frontage than its average depth, and so much of any frontage of corner lots as seemed equitable, and charge the deficiency caused by

such exemption on the whole frontage taxed pro rata. *Held*, that an assessment for sewer construction was not invalid for nonuniformity because certain lots fronting on the improvement were exempted under such section.

2. SAME—INJUNCTION—BILL—NOTICE.

Where a bill to restrain the collection of a special sewer assessment alleged that the sewer subdistrict was established in June, 1899, that the ordinance authorizing the improvement was passed January 15, 1900, and that the assessing ordinance was passed December 3, 1900, it would be assumed, in the absence of a showing to the contrary on demurrer to the bill, that in the course of such proceedings the various steps required by Rev. St. Ohio 1892, §§ 2304, 2374–2376, and 2378, then in force, were duly complied with.

3. SAME.

The publication of a resolution declaring the necessity of a sewer, and the filing of the plans and plats as required by Rev. St. Ohio 1892, §§ 2304, 2374–2376, and 2378, affords reasonable notice to the property owners of the intention to make the improvement, its extent and character, and the manner in which it would affect their property.

4. SAME.

An allegation in a bill to restrain collection of a special sewer assessment that the improvement was made without notice to complainants, "as the owners of property to be charged," was not an averment that the steps required by Rev. St. Ohio 1892, §§ 2304, 2374–2376, and 2378, for the publication of resolutions, etc., and the filing of plans, had not been taken.

5. SAME.

Rev. St. Ohio 1892, § 2370, provides that the plan devised for providing a city with sewers shall, in the discretion of the counsel, be formed with a view of dividing the corporation into as many sewer districts as may be deemed necessary for securing efficient drainage, the main or principal sewers having their outlet in a river or other proper place. *Held*, that the "proper place" for the outlet of a sewer was within the discretion of the city council, and that lot owners subject to assessment were bound by the council's action.

6. SAME.

Where a bill to restrain the collection of a sewer assessment alleged that the sewer emptied into a creek which was mostly stagnant during the larger part of the dry or summer season, and in which at no time was the volume of water or the current sufficient to carry off the sewage, such allegation did not allege that the creek was insufficient to carry off "any or a large part" of the sewage.

7. SAME—POLLUTION OF STREAMS—VILLAGE OFFICERS—VIOLATION OF STATUTE —ASSESSMENTS—VACATION.

That a village, its officers and agents, had violated certain statutes prohibiting the pollution of streams by sewage, and were liable for the penalties prescribed therefor, constituted no ground for setting aside an assessment for the construction of the sewers.

In Equity. Bill to enjoin the collection of municipal assessments. Submitted on demurrer to the bill. Sustained.

David Davis and Clifford Woods, for plaintiffs.

W. R. Collins and O. G. Bailey, for defendants.

THOMPSON, District Judge. The bill is demurred to upon the ground that it does not state a cause entitling complainants to the relief prayed for.

The grounds upon which relief is sought, as stated in the bill, are, in substance, as follows: (1) The apportionment of the assess-

ment among the property holders is not uniform, but, on the contrary, discriminates against complainants. (2) The improvement does not benefit the property of complainants, and the enforcement of the assessment will deprive complainants of property without due process of law, in violation of the fourteenth amendment to the Constitution of the United States. (3) The assessment is premature and illegal, because the outlet provided for the sewers is not such as is required by law.

The bill alleges that, of the lots bounding and abutting on the streets named in the ordinance authorizing the improvement, 9 were wholly, and about 36 were partly, exempted from assessment by the assessing ordinance, and that the exemption was made without notice to complainants.

The bill shows that the partial exemption of the 36 lots was made in compliance with the requirements of section 2383, Rev. St. Ohio 1892 (repealed 96 Ohio Laws, p. 96), then in force, which provides that:

"The council may exempt from assessment, such portion of the frontage of any lot having a greater frontage than its average depth, and so much of any frontage of corner lots, as to it may seem equitable, and charge the deficiency caused by such exemption on the whole frontage taxed pro rata; but in so doing, it shall specially set forth, in the ordinance making such assessment, each lot so exempted; which ordinance, when passed, shall be binding upon the parties interested."

In complying with the provisions of this section, the village council did not violate, but enforced, the rule of uniformity by determining the true frontage of lots having a greater frontage than their average depth, and of corner lots subject to assessment upon another street, and complainants were not prejudiced for want of notice. Of the nine lots which were wholly exempted, four, namely, lots 406, 387, 391, and 399, belonged to the complainants, and it is not shown in the bill why any of the nine were exempted. Only lots on streets "through or in which such sewers and drains may be laid" are subject to assessment, and it may be that, when the work was completed, it was found that these lots did not bound or abut upon the streets, or parts of the streets, named in the ordinance authorizing the improvement, "through or in which such sewers and drains" were laid, and for that reason were omitted from the assessing ordinance. The bill fails to show that these lots were subject to assessment.

The bill states that:

"Said alleged improvement was made and assessment levied upon an arbitrary front-foot plan, and without any notice whatever to the complainants, as the owners of property to be charged."

But this is a conclusion not warranted by the facts stated in the bill. The bill shows that the sewer subdistrict in question was established in June, 1899, that the ordinance authorizing the improvement was passed January 15, 1900, and that the assessing ordinance was passed December 3, 1900, and, in the absence of any showing in the bill to the contrary, it will be presumed, for the purposes of the demurrer, that in the course of these proceedings the

various steps required by original sections 2304, 2374–2376, and 2378 (repealed 96 Ohio Laws, p. 96. See Laning's Rev. Laws, §§ 3602, 3603, 3634–3636, and 3640; Bates' Ann. St. §§ 1536–211, 1536–212, 1536–242 to 1536–244, 1536–248), then in force, were duly taken to authorize, make, and pay for the improvement. It is provided in these sections as follows:

"Sec. 2304. When it is deemed necessary by a city or village to make a public improvement, the council shall declare by resolution the necessity of such improvement * * * and publish the resolution not less than two nor more than four consecutive weeks in some newspaper published and of general circulation in the corporation."

"Sec. 2374. Such board shall have plans and specifications prepared for the construction of the proposed main sewers, showing the size, location and inclination thereof, and the depth of the same below the surface.

"Sec. 2375. When plans and specifications for the main sewers have been prepared, the board of improvements, or the board of commissioners of sewers, shall give at least ten days' notice in one or more newspapers of general circulation in the corporation, stating that such plans have been prepared, and are filed in the office of the board for examination and inspection by parties interested; by which notice the board shall designate the portions of the work proposed to be done, and where main sewer districts are provided for, the boundaries thereof.

"Sec. 2376. At the time specified in the notice, or at an adjourned meeting, the board shall hear the parties interested, and may, if it sees proper, amend or correct the plans; and it shall thereupon file the plans, as amended, or, if no amendment be made, then the original plans, duly certified by it, in the office of the civil engineer of the corporation."

"Sec. 2378. The council, on the recommendation of the board, shall cause such sewer, or sewers, specified in the plan, as may be designated by the board, to be constructed; * * * and the council, upon the passage of such ordinance, shall cause a plat to be made, and filed in the office of the clerk of the corporation, showing the lots so bounding or abutting, and the number of the feet front of each lot."

The publication of the resolution declaring the necessity of this improvement, and the filing of the plans and plats thus required, afforded reasonable notice and means of information to the property holders of the intention to make the improvement, and of its extent and character, and of the manner in which it would affect their property. It is not stated in the bill that the village or its council or officers failed to take these various steps, or any of them, and the broad allegation that the improvement was made without notice to the complainants, "as the owners of property to be charged," cannot be construed to be an averment that these steps were not taken. Paulsen v. Portland City, 149 U. S. 30, 40, 13 Sup. Ct. 750, 37 L. Ed. 637; French v. Paving Co., 181 U. S. 324, 339, 21 Sup. Ct. 625, 45 L. Ed. 879.

Health and convenience require that town and city lots used for residence and business purposes should have the benefit of an adequate system of sewerage, and the Legislature of Ohio have provided that when a village council has declared the necessity for such a system, and has constructed it, the cost of construction may be imposed upon the owners of the lots abutting upon the streets through or in which the sewers are laid, necessarily assuming that they will be benefited thereby, and, in fact, they are benefited thereby in the enhancement of the value of their lots. Necessarily, con-

nection with an adequate system of sewerage will enhance the value of abutting village and city lots, whether they be improved or unimproved.

It is claimed, however, in the bill that this sewerage system has not a proper outlet, "and the complainants have as yet no sewers, in fact, to drain their said lots and lands," and consequently have not been benefited by the improvement; but in the stating part of the bill it is alleged, upon information and belief:

"That said sewerage system consists of a large main sewer, into which various smaller sewers, known at laterals or branches, drain, and that the said main sewer, which is, the only outlet to the entire system, empties into a small stream, which is not a river or other proper place, as required by section 2370, Rev. St. Ohio 1892, and which stream is mostly stagnant during the larger part of the dry or summer season, and in which at no time is the volume of water or the current sufficient to carry off the sewerage. This stream is known as 'Duck Creek,' * * *."

Original section 2370 (repealed 96 Ohio Laws, p. 96. See Laning's Rev. Laws, 3633; Bates' Ann. St. § 1536–241) provides as follows:

"The plan so devised shall, in the discretion of the council, be formed with the view of the division of the corporation into as many sewer districts as may be deemed necessary for securing efficient drainage and sewerage; each of the districts shall be designated by name and number, and consist of one or more main or principal sewers, with the necessary branches and connections, the main or principal sewers having their outlet in a river or other proper place; and the districts shall be so arranged as to be independent of each other so far as practicable."

By the express terms of this section the determination of what is a "proper place" is confided to the discretion of the council, and the lot owners are bound by its action. It is not shown that there is no outlet or proper place, but only that Duck creek, into which the main sewer empties, "is mostly stagnant during the larger part of the dry or summer season, and in which at no time is the volume of water or the current sufficient to carry off the sewerage." Manifestly, in the opinion of the complainants, the outlet is insufficient, but it is not stated as a fact that Duck creek fails to furnish any outlet for the sewer. The language, "and at no time is the volume of water or the current sufficient to carry off the sewerage," in the connection in which it is used, means that it does not carry off all the sewerage, not that it does not carry off any of the sewerage. If it were a fact that the creek was insufficient to carry off any or a large part of the sewerage, unequivocal and explicit language would have been used in stating the fact.

The bill also calls attention to certain statutes enacted by the General Assembly of the state of Ohio in the exercise of the police power, prohibiting the pollution of streams, etc., and prescribing penalties for the violation thereof. The village or its officers and agents may be liable for the violation of these statutes, but that fact affords no ground for setting aside the assessment.

The demurrer will be sustained.