## ASSESSMENT FOR A MUNICIPAL LIGHTING SYSTEM.

### Common Pleas Court of Putnam County.

### JACOB C. WAGNER v. VILLAGE OF LEIPSIC ET AL.*

#### Decided 1921.

*Municipal Corporations—Special Assessments—Construction of the Twenty Day Period—Preliminary Ordinances—Service of the Required Notices—Referendum Period—Installation of an Ornamental Boulevard Lighting System—Statutes Reconciled.*

1. The twenty days required before levying assessments for improve-. ments by a village council does not prevent the adoption of the preliminary ordinances before the expiration of the twenty day period, provided no contracts are made or assessments actually levied until after the lapse of the twenty day period.

2. A village council may pass its preliminary ordinances and serve the required notices without waiting thirty days for a referendum petition to be filed, and if such petition be not filed within the thirty days the ordinances are valid.

3. Joining in a protest by a taxpayer before the assessment is finally levied against his property is an acknowledgment of notice and he cannot deny it afterwards.

4. Section 3812 and related sections of the General Code authorize the installation of a boulevard or ornamental system of lighting, and the subsequent passage of 3842-1, 3842-2 and 3842-3, being *in pari materia,* does not deprive the council of that authority, but provides an additional method of procedure.

* Judgment reversed by the Court of Appeals; judgment of the Court of Appeals reversed and that of the Common Pleas affirmed by the Supreme Court, July 17, 1922.

EASTMAN, J.

The petition in this case alleges in substance that the defendant contracted with the North Western Ohio Light Company for lighting the streets, lanes and alleys of the village of Leipsic, and that the light company entered upon the performance of the contract, and is now furnishing light, heat and power to the said village and its inhabitants.

It further alleged, that the village is not the owner of a munic-

ipal plant; that the Wentworth-Dean Company is a corporation under the laws of Ohio, and that notwithstanding that the North Western Ohio Light Company is under a contract to furnish all heat, light and power required to light the streets, lanes and alleys of the village, the village council has passed a resolution, and ordinances and attempted to contract with said the Wentworth-Dean Electric Company for the construction of an ornamental lighting system on a part of the streets of said village, and determined to assess abutting property for the construction of said improvement to the extent of eighty per cent. of its cost.

It further alleges that provision was made in said resolution and ordinances for the payment of twenty per cent. of the cost of construction and maintenance from the general revenue fund, and on the 20th day of June, 1921, passed ordinances to that effect.

The allegation is made, that the ordinance does not describe or name the lots to be especially assessed, or name the width of the lots or tracts over which said assessment should be spread, and that eighty per cent. of the cost of construction and maintenance should be assessed on abutting lots and tracts, and other details not necessary to mention.

The petition also alleges that there was no lawful publication or service of notice as required by law, and that there was no provision or period of time allowed for submission of the question of the improvement to a popular vote under the referendum law.

To that petition the village filed an answer .admitting, that it had a contract with the North Western Ohio Light Company, and that it had made arrangements by resolution and ordinances for the contract described in the petition, and denied all other allegations, and there is considerable detail of the proceedings of the council pleaded in the answer, which for the purpose of this opinion it is not necessary to recite.

Upon the trial the principal contentions of the parties are, First, that there was already a contract in existence for light-

ing and furnishing power, etc., to the village and its citizens, and that this contract is sufficient, but the petition does not describe the apparatus through which said lighting, heating and power should be transmitted, nor in any way set forth the appearance of the same on the streets sought to be improved; and it is true, that there is a contract in existence made in 1914, but there is nothing in that contract to hinder the village through its proper authority from changing the form of transmission and carriage of the wires and cables, and other apparatus necessary for the work intended, and there is no limit provided for the apparatus for any necessity, and nothing to hinder the village from constructing a better outfit.

Second. Did the council serve notice as required by law? It appears, that the resolution of necessity was passed on the 31st day of May, 1921; that the two ordinances, numbers 365 and 366 were passed on June 20th, one day less than the time required for the service of notice. If that were the limit of the council's proceedings it would be fatal to the jurisdiction, and the contract would be wholly void. This will be further noticed hereafter. The section of the statute (3812, G. C.) includes lighting. The method of assessment adopted in this case is the third form, known as the "front-foot" method. This is held to be a form of taxation, and not of the taking of property under eminent domain, *Scovill* v. *Cleveland*, 1 O. S., 126; and the power of the council to levy for improvements is provided in Sec. 3784, G. C. This section is said to be strictly construed. It is also said that Sections 3911 and 3919 should be construed together, *Cincinnati* v. *Doerger*, 98 O. S., 161. The proceeding of the council was pending from the time of the passing of the resolution, *Toledo* v. *Marvel*, 8 C. C. (N. S.), 121. The remedy by injunction is provided under Section 12075 and would be properly invoked if the council did not comply with the provision of the statutes above cited, and also others cited below.

Where property is not benefited and is already amply provided for, it could not be assessed for such an improvement. 98 O. S., 161. This will be noticed later.

Under Section 3814 the resolution of necessity is to take effect upon its first publication, and this resolution is the first step and is a condition precedent to the exercise of authority. The notice is the second step in logical order, after that resolution, and this notice must be served personally or by publication. *Schram* v. *Cincinnati,* 14 N. P. (N. S.), 109.

Section 3818, G. C., provides that the notice must be completed twenty days before the improvement is made, or the assessment levied, and this provision materially modifies the logical effect that might arise from an irregularity in serving the notice because it plainly says, ''before the improvement is made, or the assessment levied.''

Failure to serve notice does not invalidate the assessment, but saves the owner of property the necessity of filing a claim for damages, in other words, leaves him the right to bring suit for his damages and compensation for property taken, if any, regardless of the action of the council. *Toledo* v. *McMahon,* 9 C. C., 194, 4 C. D., 3; *Kirby* v. *Winton Place,* 7 N. P., 169, 2 D., 171; *Schram* v. *Cincinnati,* 14 N. P. (N. S.), 109; *Jacobs* v. *Cincinnati,* 2 N. P. (N. S.), 283, 3 D., 60.

The necessity of an improvement must be declared by the council before a special assessment for its construction can be levied. *Kelly* v. *Cincinnati,* 6 App., 466; 28 O. C. A., 376.

It is also held that a notice is a condition precedent and that failure to serve the same is not a mere irregularity. *Joyce* v. *Barron,* 67 O. S., 264; *Knecht* v. *Cincinnati,* 18 C. C., 875; *Schmitt* v. *Elmwood Place,* 15 C. C., 351.

It is also held that the publication of a resolution declaring necessity, and filing the plans and specifications, affords reasonable notice to property owners. *Cleaney* v. *Norwood,* 137 Fed.. 962; 14 O. F. D., 469. This is to some extent contrary to the holding in the case of *Joyce* v. *Barron,* 67 O. S., 264, cited above. but see the third syllabus on page 265 for the following words:

''Where there is entire failure to give notice, and the resident owner has no notice or knowledge of the making of the assessment until after it is wholly completed (that means the contract for improvement) an assessment will be enjoined.''

Ordinances numbers 365 and 366 were passed one day too soon as above noted, if the twenty days be limited to the time when the council could adopt them preliminary to making contracts or completing its levy; but the resolution is the first step and it with the two ordinances constitute one act and the notice must be served before the completion of the work or levying of the assessment, and neither could be completed until after the lapse of thirty days for the referendum, and that allows more than the twenty days provided for the notice. No referendum existed in 1902 when the case of *Joyce* v. *Barron* was decided, and while the law of notice is the same, the time of taking effect of the ordinances is delayed thirty days from their dates which makes 49 days, exclusive of the date day of the resolution in this case. If the notice was served over twenty days before the first period expired, no one could be harmed, for it is a substantial compliance with the statute.

Section 4227-2 provides that if ten per cent. of the electors within thirty days file a petition for a referendum the time limit is thirty days from the filing with the mayor, or passage by the council; but it was not done in this case, and therefore the referendum does not apply, if the council did not act upon the ordinances and resolutions before the time provided for that referendum. See volume 104, page 239 of Ohio Laws.

The situation here is that notice was served of the action of the council twenty days after the passage of the resolution, one day too soon according to plaintiff's theory. In view of the time required to elapse by the provision of Section 4227-2 for referendum, this brings the case within the curative provision of Section 3911. See Green case, 7 C. C., 233, and *Schmitt* v. *Elmwood Place*, 15 C. C., 351, and especially on page 354.

The question of notice, however, is taken out of this case by the plaintiff himself joining in the protest filed July 5, while the council had the matters before it. See Exhibit N, of plaintiff's evidence. It is pertinent to say here, that the notice was served personally on him on July 1, and after advertising for bids, and upon the apportionment of assessments further notice was served on plaintiff. See Plaintiff's Exhibit H. On July

7 council ordered an advertisement for bids, which was published two consecutive weeks. At this time neither the resolution of May 21, nor ordinances 365 and 366 were in force, but they were all one matter and still pending with the council, because notice was not yet perfected.

The service of notice of the resolution of May 31st, was the first step to put the resolution into effect, and was necessary to the validity of both ordinances, yet the statute does not require that it should have been completed before the action of the council passing on the ordinances. It is simply an irregularity and Section 3911 cures it.

None of the proceedings could be effective until the service of notice was completed, and the thirty days referendum passed by. The three acts each contain a clause providing, see Section 8 of the resolution, Section 5 of No. 365 and Section 8 of 366, the notice that they each take effect at the earliest date allowed by law.

The notice was served on the plaintiff July 1, 1921. Under Section 4227-2 these proceedings became effective July 31, 1921, and the council might have completed its assessment on August 1, but it did nothing further until August 8, when it passed its apportionment. There was therefore nothing affecting plaintiff's property completed until that day.

Advertising for bids and other preliminaries were irregular and illogical, but did not deprive anyone of his rights and were in the same category as the proceedings mentioned above. No one could know that they would ever become effective until August 8, 1921. See Exhibit G when the bid was approved, but the plaintiff had his notice 31 days previous and joined in the protest.

The third question raised by the pleadings and evidence in this case is, "Did the council abuse its discretion?" The present situation of the streets sought to be improved, is that the wires now in use for lighting are carried overhead on tall poles; that the lamps in use and furnished by said village are not sufficient for lighting said streets in the manner demanded by the public, and the citizens who occupy said lots. Private citi-

zens are now, and have been for a long time providing a large number of lights at their own expense.

About fifty men and firms doing business along these streets have subscribed and paid nearly $800 to assist the council in installing the proposed improvement. The poles and wires on said streets are to be removed therefrom, the lights will be increased, and better distributed than at present, and the village will own that part of its lighting system contemplated by this proposed improvement.

The convenience and safety will be much increased, and the general appearance of the streets will be much more enhanced by the improvement. The testimony of the majority of the witnesses sworn at the hearing indicates that the money value of the property assessed will be increased. The evidence does not disclose that any lot is assessed beyond the limit of 33 1-3 per cent. of its taxable value. The evidence is silent upon that proposition, and the bulk of the testimony consists of opinions as to the probable increase in value, on the completion of the improvement, of the property affected by the assessment. The weight of the evidence is with the defendant on that question, but that is only one of the elements of benefit that accrue to assessed property for an improvement of this nature. Benefits are not all counted in dollars and cents, the health and convenience of the citizens in and about the vicinity of the property assessed are elements of special benefit, and so is relief from carrying additional lights, and such is the removal of wires and poles from the streets like elements in the consideration of special benefits.

The plans and specifications indicate an elaborate and well constructed system of carrying the transmission wires by cables and conduits, which will increase not only neatness and freedom from obstruction on the streets, but safety to both person and property of people who occupy those places and live in the vicinity.

It is the business of the council to see that the streets are kept clear from obstructions of every nature, and it is also its business to provide means for transporting the elements of com-

fort to the places where needed. These streets are prominent, and are rapidly becoming more so in the business section of the village, and every pole and every wire that may be removed is so much of a clearance of the obstructions, while the permanent standard contemplated in this contract will neither be objects of annoyance or elements of danger, but will tend to the security of the convenience, health and welfare of the public. So far as the ornamental part is concerned there is no evidence to show that any additional cost was levied for that purpose, and there is nothing in the plans and specifications to show that there is any excess expenditure on account of the ornament that may embellish any of the standards. So far as can be derived from the plans and specifications they being the only evidence in regard to ornaments, they seem to be perfectly sensible and reasonable, and the paint which is required for these ornaments is an element of permanence by preservation of the metal from the ravages of nature.

Upon the evidence the court is not able to find that any abuse of discretion such as will bring the case within the statute authorizing injunction has occurred. The law has been substantially complied with, there does appear to be necessity for an improvement, the contract seems reasonable, and the method by which the council is to proceed in the absence of fraud can not be circumscribed by an order of court.

The law prescribed three methods of assessments, and the council has chosen the third method, that is "foot-front" form. In the resolution and ordinances, the language is so constructed, that without careful analysis it would seem that another plan, that of assessing property for special benefits, was also contemplated; but the apportionment ordinance makes the matter clear by expressly naming the amount for each front foot of property abutting on the street. The reference therefore to special benefits concerning the methods of assessments may be considered surplusage, and that to some extent it guards against levying excessively on any particular property, if reference to the statute which limits the assessment to one third of the assessed or taxable value be had. So long as the language is within the

statute any surplusage that may be used can do no harm, especially since the final action of the council has made it all clear.

Refering to the claim in the pleadings, that the lots are not properly described, it is sufficient to say that the resolution and the ordinances state the beginning, extent and end of the proposed improvement in each direction. The plans or maps designate the location of all of the standards, and the assessment ordinance of August 8th designates each lot by number, and states the amount of the assessment on each and the amount per front foot is mentioned one or more times. Furthermore the map shows the sizes of the lots, as well as their relative locations to each other. Hence, no one could be misled. This is in harmany with the decided cases, and with the statute. See Section 3826, G. C.

Believing, that notwithstanding some irregularities in the various proceedings, the law is substantially complied with and all parties in interest have had notice at a proper time to protect their rights, and especially the plaintiff.

The conclusion is that the plaintiff is not entitled to the relief prayed for. The petition will therefore be dismissed, judgment will be rendered against the plaintiff for the costs herein taxed, exceptions to the foregoing finding are ordered to be allowed, and in case the plaintiff shall desire to appeal this action to the Court of Appeals the bond will be fixed at $500 with sureties to the satisfaction of the clerk.